UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ILLINOIS HEALTHY ALTERNATIVES ASSOCIATION; MNG 2005, INC.; GREEN STREET 79 LLC; LIFE ELEMENT, LLC; OPT HOLDINGS TECHNOLOGIES LLC; ZADA VENTURES LLC, d/b/a Cubbington's Cabinet,<br><br>Plaintiffs<br>v.<br>KWAME RAOUL, Attorney General of Illinois; JERRY F. COSTELLO II, Director, Illinois Department of Agriculture; MARIO TRETO, JR., Secretary, Illinois Department of Financial and Professional Regulation; BRENDAN KELLY, Director, Illinois State Police; DAVID HARRIS, Director, Illinois Department of Revenue; SAMEER VOHRA, M.D., Director, Illinois Department of Public Health,<br>Defendants. | Case No. |

**MEMORANDUM IN SUPPORT OF EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

Michael I Rothstein (ARDC 6195991)
Nathaniel G. Goodman (ARDC 6339039)
Jonathan P. Parts (ARDC 6349744)
TABET DIVITO & ROTHSTEIN LLC
209 S. LaSalle St., Suite 700
Chicago, IL 60604
mrothstein@tdrlaw.com
ngoodman@tdrlaw.com
jparts@tdrlaw.com

*Attorneys for Plaintiffs*

# TABLE OF CONTENTS

**Page**


INTRODUCTION ........................................................................................ 1

STATEMENT OF FACTS ................................................................................ 2

A. THE LEGALIZATION OF HEMP ................................................................ 2

B. PASSAGE OF THE HEMP ACT AND ITS DISCRIMINATORY EFFECT ........................................................................................ 3

1. Dispensing Organization Licenses ................................................... 6

2. Infuser Licenses ................................................................................ 6

3. Craft Grower Licenses ....................................................................... 7

4. Cultivation Center Licenses ............................................................. 8

C. THE ACT'S IMPACT ON THE HEMP INDUSTRY PLAINTIFFS LEGAL STANDARD ARGUMENT ........................................................ 8

LEGAL STANDARD ..................................................................................... 11

ARGUMENT ................................................................................................ 12

A. THE HEMP INDUSTRY PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS OF THEIR DORMANT COMMERCE CLAUSE CLAIM. .......................................................................................... 13

1. Illinois's hemp regulations unconstitutionally discriminate against out-of-state economic interests. ........................................ 14

a. Illinois discriminates against interstate commerce. ................ 14

b. Illinois's regulatory scheme fails narrow tailoring. ................. 18

2. Illinois's hemp regulations fail *Pike* balancing because the burden on commerce is direct and clearly excessive. .......................... 19

B. THE HEMP INDUSTRY PLAINTIFFS FACE IMMINENT IRREPARABLE HARM. ......................................................................... 22

C. NO LEGAL REMEDY IS SOUGHT NOR AVAILABLE. .............................. 23

D. THE BALANCE OF EQUITIES WEIGH HEAVIEST WITH THE HEMP INDUSTRY PLAINTIFFS. ................................................................ 24

CONCLUSION .......................................................................................... 24

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anheuser-Busch, Inc. v. Schnorf*,
738 F. Supp. 2d 793 (N.D. Ill. 2010) ........................................................................ 19

*C.Y. Wholesale, Inc. v. Holcomb*,
965 F.3d 541 (7th Cir. 2020) .................................................................................... 20

*Dean Milk Co. v. City of Madison*,
340 U.S. 349 (1951) ................................................................................................ 15

*Delta Beverage, Inc. v. Canepa*,
No. 3:26-cv-1793, 2026 WL 2617770 (N.D. Ohio Sept. 4, 2026) ........................... 16

*Fresh Farms E Liquid LLC v. Tischler*,
No. 3:26-cv-2059, 2026 WL 2873791 (N.D. Ohio Sept. 24, 2026) ......................... 16

*GoodCat, LLC v. Cook*,
202 F. Supp. 3d 869 (S.D. Ind. 2016) ................................................................ 23, 24

*Gov't Suppliers Consolidating Servs., Inc. v. Bayh*,
734 F. Supp. 853 (S.D. Ind. 1990) ........................................................................... 23

*Gov't Suppliers Consolidating Servs., Inc. v. Bayh*,
975 F.2d 1267 (7th Cir. 1992) .................................................................................. 19

*Granholm v. Heald*,
544 U.S. 460 (2005) ................................................................................ 13, 14, 16, 18

*Green Room LLC v. Wyoming*,
157 F.4th 1196 (10th Cir. 2025) ........................................................................ 21, 22

*Hunt v. Wash. State Apple Adver. Comm'n*,
432 U.S. 333 (1977) ................................................................................................ 15

*Illinois v. Vought*,
820 F. Supp. 3d 727 (N.D. Ill. 2026) ........................................................................ 11

*Ind. Fine Wine & Spirits, LLC v. Cook*,
459 F. Supp. 3d 1157 (S.D. Ind. 2020) ..................................................................... 24

*Life Spine, Inc. v. Aegis Spine, Inc.*,
8 F.4th 531 (7th Cir. 2021) .................................................. 23

*Loki Brands, LLC v. Platkin*,
No. 24-9389-ZNQ-TJB, 2024 WL 4457485 (D.N.J. Oct. 10, 2024) .................. 16

*McDonough Assocs., Inc. v. Grunloh*,
722 F.3d 1043 (7th Cir. 2013) ................................................ 23

*Merritte v. Kessel*,
561 F. App'x 546 (7th Cir. 2014) ............................................. 11

*NA Main Street LLC v. Cook*,
508 F. Supp. 3d 320 (S.D. Ind. 2020) ......................................... 19

*Nat'l Pork Producers Council v. Ross*,
598 U.S. 356 (2023) (Roberts, C.J., concurring in part and
dissenting in part) .......................................................... 19

*Nat'l Solid Wastes Mgmt. Ass'n v. Meyer*,
63 F.3d 652 (7th Cir. 1995) .................................................. 20

*New Energy Co. of Ind. v. Limbach*,
486 U.S. 269 (1988) .......................................................... 13

*North Fork Distrib. I, LLC v. Wensinger*,
No. 26CV312 (Ohio Ct. Common Pleas, Sandusky Cty., May 14,
2026) (attached hereto as Ex. F) .............................................. 17

*Northern Virginia Hemp & Agriculture LLC v. Virginia*,
125 F.4th 472 (4th Cir. 2025) ................................................ 21

*Or. Waste Sys., Inc. v. Dept. of Env't Quality of State of Or.*,
511 U.S. 93 (1994) ........................................................... 14

*Pike v. Bruce Church, Inc.*,
397 U.S. 137 (1970) .......................................................... 19, 22

*Simon v. Coop. Educ. Serv. Agency #5*,
46 F.4th 602 (7th Cir. 2022) ................................................. 23

*Tenn. Wine & Spirits Retailers Ass'n v. Thomas*,
588 U.S. 504 (2019) .......................................................... 13, 14, 18

*Titan Logistics Grp. LLC v. Tischler*,
838 F. Supp. 3d 733 (N.D. Ohio 2026) ......................................... 17

*Titan Logistics Grp. LLC v. Tischler*,
No. 26-3648, Dkt. 33 (6th Cir. Sept. 25, 2026) (attached as Ex. G)...................... 17

*Valencia v. City of Springfield*,
883 F.3d 959 (7th Cir. 2018) ............................................................... 11, 12

*Whitaker v. Kenosha Unified Sch. Dist. No. 1 Bd. of Educ.*,
858 F.3d 1034 (7th Cir. 2017) ........................................................................ 11

*Wisconsinites for Alternatives to Smoking & Tobacco, Inc. v. Casey*,
172 F.4th 976 (7th Cir. 2026)......................................................................... 22

**Statutes**

410 ILCS 705/1-1 ............................................................................... 1, 12, 25

410 ILCS 705/1-10 .......................................................................................*passim*

410 ILCS 705/15-35.20 ............................................................................................ 6

410 ILCS 705/15-70 ............................................................................... 5, 15, 18

410 ILCS 705/30-5 .................................................................................................. 7

410 ILCS 705/30-30 ................................................................................................ 5

410 ILCS 705/35-5 .................................................................................................. 6

410 ILCS 705/35-18 ................................................................................................ 7

410 ILCS 705/35-25 ................................................................................................ 4

410 ILCS 705/120-5 ................................................................................................ 8

410 ILCS 707/1-999 ................................................................................................ 1

410 ILCS 707/5.......................................................................................... 3, 12, 14, 25

410 ILCS 707/65..................................................................................................... 21

410 ILCS 707/999.................................................................................................... 1

505 ILCS 89/5................................................................................................... 3, 14

720 ILCS 550/4 to 5.1 ...................................................................................... 3, 14

7 U.S.C. § 1639o...................................................................................................... 3

21 U.S.C. § 802 .......... 2

Pub. L. No. 115-334 .......... 2

Pub. L. No. 119-37, 139 Stat. 558 .......... 3

Pub. L. No. 119-103 .......... 3

**Other Authorities**

8 Ill. Admin. Code § 1300.10 .......... 5

8 Ill. Admin. Code § 1300.40(c) .......... 5, 15, 18

8 Ill. Admin. Code § 1300.102(b) .......... 8

Eleventh Amendment .......... 23

Federal Rules of Civil Procedure Rule 65 .......... 1

H.R. 7010, H.R. 7024 .......... 4

Zachary T. Neuhofer, *Changes to the Statutory Definition of Hemp and Implications for Agricultural Policy* (Sept. 28, 2026), https://www.congress.gov/crs-product/IF13136 .......... 4

Plaintiffs Illinois Healthy Alternatives Association ("ILHAA")[1]; MNG 2005, Inc. ("MNG"); Green Street 79 LLC ("Green Street"); Life Element, LLC ("Life Element"); OPT Holdings Technologies LLC ("OPT Holdings"); and Zada Ventures LLC, d/b/a Cubbington's Cabinet ("Zada") (collectively, the "**Hemp Industry Plaintiffs**"), respectfully move this Court for an emergency temporary restraining order ("TRO") pursuant to Rule 65(b) of the Federal Rules of Civil Procedure, and thereafter a preliminary injunction pursuant to Rule 65(a), enjoining Defendants and all persons acting in concert with them from enforcing the Illinois Hemp Act and any other statutory or regulatory implementation of the Hemp Act.

## INTRODUCTION

On June 12, 2026, Illinois Governor JB Pritzker signed into law the Illinois Hemp Act, codified at 410 ILCS 707/1-999. The Hemp Act provisions relevant to this lawsuit are scheduled to take effect on November 12, 2026. 410 ILCS 707/999. The Hemp Act revises Illinois's regulation of low-potency hemp-derived cannabinoid products in effect since Illinois enacted the Industrial Hemp Act in 2018, 505 ILCS 89/1 *et seq.*, and the Cannabis Regulation and Tax Act ("CRTA") in 2019, 410 ILCS 705/1-1 *et seq.*

If allowed to go into effect on November 12, 2026, the Hemp Act will immediately and unconstitutionally slam shut access to Illinois markets by out-of-state companies that cultivate, manufacture, and sell federally legal hemp-derived

[1] ILHAA brings this action on behalf of its 250 members, including growers, manufacturers, distributors, and retailers in Illinois's legal hemp industry. References herein to the effect of legislation on ILHAA are intended to be understood as the effect on ILHAA members.

cannabinoid products. In addition, the Hemp Act will immediately obliterate the businesses of thousands of Illinois farmers, infusers, distributors, and retailers who grow, manufacture, or sell federally legal hemp-derived cannabinoid products.

Because the Hemp Act violates the U.S. Constitution's Commerce Clause, this Court should enter a temporary restraining order and a preliminary injunction enjoining its enforcement by the State of Illinois officials named as defendants in this lawsuit.

## STATEMENT OF FACTS

In 2018, Congress passed the Agriculture Improvement Bill of 2018, Pub. L. No. 115-334 (the "2018 Farm Bill"), which decriminalized hemp. Accordingly, under current federal law, hemp and hemp-derived products are federally lawful. This groundbreaking legislation spawned the growth of a nationwide market for hemp and hemp-derived products, with such products flowing freely between and among the several states. Consequently, the federal constitutional principles of the dormant Commerce Clause attached such that no state could discriminate against hemp-derived products manufactured in another state or excessively burden interstate commerce.

### A. THE LEGALIZATION OF HEMP

The federal 2018 Farm Bill legalized the possession, cultivation, and interstate commerce of hemp. *See* 21 U.S.C. § 802(16)(B). Because hemp and cannabis are both derived from the plant *Cannabis sativa L.*, the 2018 Farm Bill uses the concentration of delta-9 tetrahydrocannabinol ("THC") to distinguish the two. As defined by the

2018 Farm Bill, "hemp" means any part of the *Cannabis sativa L.* plant and "all derivatives, extracts, cannabinoids, [or] isomers . . . with a delta-9 [THC] concentration of not more than 0.3 percent on a dry weight basis." 7 U.S.C. § 1639o(1). Thus, a product meeting the federal definition of hemp is not a controlled substance, and therefore hemp became lawful federally.

Illinois followed suit. In 2018, Illinois passed the Industrial Hemp Act. The Illinois definition of hemp mirrored the federal definition. *See* 505 ILCS 89/5. While the Illinois Cannabis Control Act makes it unlawful to possess, manufacture, or deliver cannabis, 720 ILCS 550/4 to 5.1, the CRTA excludes hemp from its definition of cannabis. 410 ILCS 705/1-10. Accordingly, hemp products, as defined under federal and Illinois law, were not "cannabis" and their sale was not sanctionable.

## B. PASSAGE OF THE HEMP ACT AND ITS DISCRIMINATORY EFFECT

The Hemp Act drastically alters the legal framework. Under the Act, "hemp" means any part of the *Cannabis sativa L.* plant with "a *total* [THC] concentration, including [THC] acid, of not more than 0.3% on a dry-weight basis," rather than just the delta-9 THC concentration. 410 ILCS 707/5 (emphasis added). And any final consumer hemp cannabinoid product must contain less than 0.4 milligrams of *total* THC per container. *Id.*

Although Congress previously passed a similar amendment to federal law, Pub. L. No. 119-37, 139 Stat. 558, the federal changes are not yet effective and may never be. On September 2, 2026, Congress extended the effective date of the change in federal law to December 11, 2026. Pub. L. No. 119-103. Several bills are pending

before Congress to further delay the effective date beyond December 11, 2026: H.R. 7010, H.R. 7024, and S. 3686 would delay the new federal hemp definition and THC per-container limits until November 2028. *See* Zachary T. Neuhofer, *Changes to the Statutory Definition of Hemp and Implications for Agricultural Policy*, CONGRESS.GOV (Sept. 28, 2026), https://www.congress.gov/crs-product/IF13136. In addition, the hemp product industry is seeking further amendments to the new federal hemp definition and container limits to preserve the industry. (*See* Decl. of Craig Katz ¶ 56 (attached as Ex. A) ("Katz Decl.").)

To date, the federal definition of hemp established in the 2018 Farm Bill remains unchanged. Consequently, come November 12, 2026, hemp that is federally legal and bought and sold within interstate commerce will be cannabis under Illinois law.

Illinois's cannabis industry is a closed-loop market. Under the CRTA, a dispensary is a business that sells cannabis products to consumers. 410 ILCS 705/1-10. The dispensaries may acquire cannabis and cannabis-infused products only from a cannabis business licensed by the Illinois Department of Agriculture and Department of Financial and Professional Regulation ("IDFPR"). *Id.* An infuser is a business licensed by the Department of Agriculture to incorporate cannabis into a product to produce a cannabis-infused product. *Id.* Infusers may only sell or distribute their products to licensed dispensaries. 410 ILCS 705/35-25(d). Craft growers are businesses licensed by the Department of Agriculture that cultivate, dry, cure, and package cannabis to be sold at dispensaries or used at an infuser organization. 410

ILCS 705/1-10. They may only sell or distribute cannabis to other licensed cannabis business establishments. 410 ILCS 705/30-30(d). Cultivation centers are larger cannabis growing operations that are licensed by the Department of Agriculture to cultivate, process, and transport cannabis products to other licensed cannabis business establishments. 410 ILCS 705/1-10.

The CRTA requires cultivators, craft growers, and infusers to be located within Illinois: "All cannabis, cannabis-infused products, and cannabis seeds must be obtained from an Illinois registered adult use cultivation center, craft grower, infuser, or another dispensary," and "[a] dispensing organization shall not . . . [o]btain cannabis or cannabis-infused products from outside the State of Illinois." 410 ILCS 705/15-70(c), (p)(3). So, from seed-to-sale, Illinois's cannabis market is a closed-loop. Due to Illinois's redefinition of hemp, the Hemp Industry Plaintiffs may no longer deliver or import their federally lawful hemp product into Illinois for sale.

The Department of Agriculture's regulations go even further. A "cannabis business establishment" is a cultivation center, craft grower, infuser organization, dispensing organization, or transporting organization. 8 Ill. Admin. Code § 1300.10. "On or after July 1, 2026 a Department licensed cannabis business establishment shall not incorporate, manufacture or transport any cannabis product that contains cannabis, hemp, industrial hemp, or any cannabis plant material unless such material was cultivated by a licensed *Illinois* cannabis business establishment." 8 Ill. Admin. Code § 1300.40(c) (emphasis added). Thus, even lawful hemp that meets

Illinois's hemp definition may not be incorporated with cannabis products unless it is grown in Illinois, another protectionist maneuver.

Moreover, if the Hemp Act becomes effective, to participate in Illinois's hemp-derived cannabinoid market, the Hemp Industry Plaintiffs must be licensed. But no licenses are available for any type of relevant cannabis business.

**1. Dispensing Organization Licenses**

The CRTA mandates that IDFPR shall issue no more than 500 adult-use dispensary licenses. 410 ILCS 705/15-35.20(b). The Act authorized IDFPR to issue dispensary licenses without additional regulatory action through January 1, 2022. *Id.* § 15-35.20(a). (According to IDFRP's recent publication on the number of licenses, 290 active adult use dispensary licenses have been issued. (Katz Decl., Ex. A ¶ 35.)) After January 1, 2022, IDFPR cannot issue new adult use dispensary licenses without first taking the regulatory action specified in the CRTA. 410 ILCS 705/15-35.20(a). To date, IDFPR has not taken the steps necessary to issue new dispensary licenses. (Katz Decl., Ex. A ¶¶ 34–35.) This means no new dispensary licenses are available for the Hemp Industry Plaintiffs to apply for.

**2. Infuser Licenses**

Next, the CRTA mandated that the Department of Agriculture issue 40 infuser licenses by July 1, 2020, and it allowed the Department to issue up to 60 additional infuser licenses by December 21, 2021. 410 ILCS 705/35-5(a), (c). After January 1, 2022, the Department "may by rule modify or raise the number of infuser licenses." *Id.* § 35-5(d). According to the Department's Division of Cannabis Regulation's

website, it has issued only 55 infuser licenses to date. (Katz Decl., Ex. A ¶ 32.) The Department has promulgated no rules to increase the number of infuser licenses, meaning no infuser licenses are currently available. (*Id.* ¶¶ 31–32.)

Along with the passage of the Hemp Act, the General Assembly also amended the CRTA to add 45 additional infuser licenses to be issued by the Department by January 1, 2027, through a "social equity experience lottery" ("SEEL"). 410 ILCS 705/35-18. These licenses are available only for applicants that are majority-owned by individuals who (1) live in a lower socioeconomic area and (2) have a criminal history or have been impacted by criminal violence. *See id.* § 35-18(a)(1)–(2). The Hemp Industry Plaintiffs do not qualify for the SEEL. (Katz Decl., Ex. A ¶ 33; Decl. of James Weddigen ¶ 15 (attached as Ex. B) ("Weddigen Decl."); Decl. of Jeremy Dedic ¶ 19 (attached as Ex. C) ("Dedic Decl."); Decl. of Mohammed Hammad ¶ 14 (attached as Ex. D) ("Hammad Decl."); Decl. of Raja Jaber ¶ 15 (attached as Ex. E) ("Jaber Decl.").)

**3. Craft Grower Licenses**

The CRTA required the Department of Agriculture to issue 40 craft grower licenses by July 1, 2020, and it allowed the Department to issue up to 60 additional craft grower licenses by December 21, 2021. 410 ILCS 705/30-5(a)–(b). After January 1, 2022, the Department "may by rule modify or raise the number of craft grower licenses." *Id.* § 30-5(c). According to the Department's Division of Cannabis Regulation's website, it has issued only 85 craft grower licenses to date. (Katz Decl.,

Ex. A ¶ 30.) The Department has promulgated no rules increasing the number of craft grower licenses, meaning there are currently no such licenses available.

#### 4. Cultivation Center Licenses

As for the cultivation center licenses, the CRTA states that no more than 30 such licenses may be issued, and the Department of Agriculture has the discretion to issue those licenses by rule. 410 ILCS 705/120-5(1). The Department will accept applications for such licenses "for 14 calendar days after the date indicated on the Department's website." 8 Ill. Admin. Code § 1300.102(b). To date, the Department has issued 21 cultivation center licenses and has not posted that additional applications will be accepted. (Katz Decl., Ex. A ¶¶ 28–29.)

Not only are new dispensing organization, infuser, craft grower, or cultivation center licenses not presently available, but obtaining a license typically takes between one and two years. (*Id.* ¶¶ 28, 31, 34.)

### C. THE ACT'S IMPACT ON THE HEMP INDUSTRY PLAINTIFFS

The Hemp Industry Plaintiffs consist of businesses and a trade association of members who operate in the federally legal hemp market. (Katz Decl., Ex. A ¶¶ 6, 13, 17 45; Weddigen Decl., Ex. B ¶ 7; Dedic Decl., Ex. C ¶ 5; Hammad Decl., Ex. D ¶ 6; Jaber Decl., Ex. E ¶ 3.) The Hemp Industry Plaintiffs participate in every facet of Illinois's legal hemp industry: growing, manufacturing, distributing, and retailing. (Katz Decl., Ex. A ¶¶ 9, 48; Weddigen Decl., Ex. B ¶ 5; Dedic Decl., Ex. C ¶ 4; Hammad Decl., Ex. D ¶ 5; Jaber Decl., Ex. E ¶ 3.) The Hemp Industry Plaintiffs pride themselves on manufacturing and selling safe, legal low-potency hemp-derived

cannabinoid and other wellness products. (Katz Decl., Ex. A ¶ 17; Weddigen Decl., Ex. B ¶¶ 3, 7; Dedic Decl., Ex. C ¶ 5; Hammad Decl., Ex. D ¶ 5; Jaber Decl., Ex. E ¶ 3.) These products include edibles, tinctures, inhalables, topicals, beverages, and pet products. (Katz Decl., Ex. A ¶ 9; Weddigen Decl., Ex. B ¶ 7; Dedic Decl., Ex. C ¶ 10; Hammad Decl., Ex. D ¶ 6; Jaber Decl., Ex. E ¶ 4.) The majority of these products are manufactured outside Illinois, purchased out-of-state, or made with hemp cultivated outside Illinois. (Katz Decl., Ex. A ¶¶ 15–16, 46–47; Weddigen Decl., Ex. B ¶ 9; Dedic Decl., Ex. C ¶ 13; Hammad Decl., Ex. D ¶ 8; Jaber Decl., Ex. E ¶ 5.)

Illinois's legal hemp industry is quite profitable, with sales in 2025 exceeding one-half billion dollars. (Katz Decl., Ex. A ¶ 51.) Of the hundreds of hemp businesses in Illinois, ILHAA represents approximately 50 percent of them. (*Id.* ¶ 52.) If the Hemp Act goes into effect on November 12, 2026, however, the majority, if not all, of the Hemp Industry Plaintiffs' products will become "cannabis" under the CRTA.

This will have devastating impacts on the Hemp Industry Plaintiffs, affecting businesses both big and small. The Hemp Industry Plaintiffs will unable to sell their products or continue sourcing them from out-of-state due to the CRTA's restrictions and lack of available licenses. (Katz Decl., Ex. A ¶¶ 23–24, 26–36; Weddigen Decl., Ex. B ¶ 9; Dedic Decl., Ex. C ¶ 15; Hammad Decl., Ex. D ¶ 12; Jaber Decl., Ex. E ¶ 11.)

ILHAA's members will face business closures, laying off employees, liquidating their inventory, and incur continuing lease obligations. (Katz Decl., Ex. A ¶ 54.)

MNG, a vertically integrated Missouri corporation, manufactures its low-potency hemp-derived cannabinoid products outside Illinois. (*Id.* ¶¶ 6, 9, 11, 16.) It operates fourteen retail stores in Illinois that employ 100 workers. (*Id.* ¶¶ 11–12.) If the Hemp Act is enforced November 12, 2026, it will be forced to consolidate, lay off a large number of employees, liquidate its inventory, incur millions of dollars in losses, and/or expend immense capital to move its operations in-state. (*Id.* ¶¶ 27, 36–40.)

Life Element, a small one-shop retailer in Springfield, will have no choice but to close down after eight years of serving its community, lay off its employees, lose almost $500,000 in revenue, and incur continuing lease obligations totaling almost $80,000. (Weddigen Decl., Ex. B ¶¶ 5, 12–14.) Zada has operated Cubbington's Cabinet in Roscoe Village in Chicago since 2020. (Dedic Decl., Ex. C ¶ 4.) It has developed strong ties to the local community, earning 10 "Best of Chicago" awards from the Chicago Reader. (*Id.* ¶ 7.) If the Hemp Act is enforced November 12, 2026, the reduction in legal inventory and sales revenue will force the closure of Cubbington's Cabinet and cause it to lay off employees, liquidate inventory, and lose six years of investment. (*Id.* ¶¶ 15–17.)

OPT Holdings is a distribution company operating in Bridgeview, Illinois that distributes low-potency hemp-derived cannabinoid products nationwide with millions of dollars in revenue. (Hammad Decl., Ex. D ¶¶ 3, 5, 7.) If the Hemp Act becomes effective November 12, 2026, it will be forced to shut down, liquidate its inventory, lay off employees, and remain obligated to pay thousands of dollars in rent payments.

(*Id.* ¶¶ 12–13.) Green Street, another distribution company operating in Bridgeview, Illinois, serves 350 retailers in Illinois and 100 retailers outside Illinois with millions of dollars in sales. (Jaber Decl., Ex. E ¶¶ 3, 6, 8.) If the Hemp Act is enforced on November 12, 2026, Green Street will be forced to reduce its operations, lay off most of its employees, and lose half of its annual revenue. (*Id.* ¶ 12.)

Illinois's efforts to cram the hemp market into its protectionist cannabis market are not only unconstitutional but will also cause irreparable damage to many innocent and good-faith actors.

## LEGAL STANDARD

The standard for a TRO and a preliminary injunction is the same. *See Merritte v. Kessel*, 561 F. App'x 546, 548 (7th Cir. 2014); *Illinois v. Vought*, 820 F. Supp. 3d 727, 730 (N.D. Ill. 2026). In determining whether to issue such an injunction, the Seventh Circuit employs a two-step inquiry. *Whitaker v. Kenosha Unified Sch. Dist. No. 1 Bd. of Educ.*, 858 F.3d 1034, 1044 (7th Cir. 2017). In the threshold phase, the plaintiff must show that: (1) absent a preliminary injunction, it will suffer irreparable harm; (2) traditional legal remedies would be inadequate; and (3) the claim "has some likelihood of succeeding on the merits." *Valencia v. City of Springfield*, 883 F.3d 959, 965 (7th Cir. 2018).

If the movant satisfies these requirements, the court proceeds to the balancing phase, where "the court weighs the irreparable harm that the moving party would endure without the protection of the preliminary injunction against any irreparable harm the nonmoving party would suffer if the court were to grant the requested

relief." *Id.* at 965 (citation and internal quotation marks omitted). This is a sliding-scale approach where the more likely the plaintiff is to win, the less heavily the balance of harms need weigh in their favor. *Id.*

## ARGUMENT

The Hemp Act and the statutory and regulatory implementation of the Act, through the CRTA, violate the dormant Commerce Clause. No legal remedy exists to the Hemp Industry Plaintiffs, and allowing the Hemp Act's enforcement will cause them irreparable harm through the destruction or severe impairment of their businesses. Delaying implementation and enforcement of the Hemp Act while the Court considers whether it violates the dormant Commerce Clause will not harm the Defendants charged with implementing and enforcing it. The equities thus tip heavily in the Hemp Industry Plaintiffs' favor. Accordingly, before November 12, 2026, the Defendants should be enjoined from:

- implementing the redefinition of "hemp" in section 5 of the Hemp Act, 410 ILCS 707/5, to reclassify federally legal hemp and hemp-derived products as "cannabis" subject to regulation by the Cannabis Regulation and Tax Act ("CRTA"), 410 ILCS 705/1-1 *et seq.*;

- implementing the 0.4 mg total THC per container limitation in section 5 of the Hemp Act, 410 ILCS 707/5, to classify federally legal products as "cannabis" subject to regulation by the Cannabis Regulation and Tax Act ("CRTA"), 410 ILCS 705/1-1 *et seq.*;

- prohibiting the sale of federally legal hemp and hemp-derived products by out-of-state companies into Illinois;

- prohibiting Illinois purchasers from acquiring hemp from sources outside Illinois;

- requiring companies that cultivate, manufacture, distribute, or sell federally legal hemp and hemp-derived products to obtain the licenses specified in the CRTA for transactions in cannabis; and
- otherwise enforcing the Hemp Act or the CRTA in any way to restrict transactions in federally legal hemp and hemp-derived products.

## A. THE HEMP INDUSTRY PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS OF THEIR DORMANT COMMERCE CLAUSE CLAIM.

The Commerce Clause provides that "[t]he Congress shall have Power . . . [t]o regulate Commerce . . . among the several States[.]" Art. I, § 8, cl. 3. "Although the Clause is framed as a positive grant of power to Congress, [the Supreme Court has] long held that this Clause also prohibits state laws that unduly restrict interstate commerce." *Tenn. Wine & Spirits Retailers Ass'n v. Thomas*, 588 U.S. 504, 514 (2019). This "negative" aspect of the Commerce Clause—known as the dormant Commerce Clause—"prevents the States from adopting protectionist measures and thus preserves a national market for goods and services." *Id.*; *see also New Energy Co. of Ind. v. Limbach*, 486 U.S. 269, 273 (1988) (explaining that the prevention of "economic protectionism" is at the core of the dormant Commerce Clause). State laws that "deprive citizens of their right to have access to the markets of other States on equal terms" violate the dormant Commerce Clause, as do laws requiring an out-of-state company to establish "a bricks-and-mortar distribution operation" in that state so that the company may access that state's market for the company's products. *Granholm v. Heald*, 544 U.S. 460, 473, 475 (2005).

**1. Illinois's hemp regulations unconstitutionally discriminate against out-of-state economic interests.**

Laws that discriminate against interstate commerce—that is, laws that by their own terms or effect mandate differential treatment of in-state and out-of-state interests in favor of in-state economic interests over out-of-state interests—are *per se* invalid. *Id.* at 472, 476, 487, 489. This is the case whether the law discriminates explicitly, has a discriminatory purpose, or has substantial discriminatory effects. *See Or. Waste Sys., Inc. v. Dept. of Env't Quality of State of Or.*, 511 U.S. 93, 99 (1994). Such laws can be sustained "only on a showing that it is narrowly tailored to advance a legitimate local purpose." *Tenn. Wine*, 588 U.S. at 518.

**a. Illinois discriminates against interstate commerce.**

Illinois's new cannabis regulatory scheme has the direct effect of discriminating against out-of-state hemp companies. Under Illinois law, "cannabis" does not include hemp or final consumer hemp cannabinoid products. 410 ILCS 705/1-10. Previously, "hemp" could not have a delta-9 THC concentration of more than 0.3% on a dry weight basis. 505 ILCS 89/5. As of November 12, 2026, hemp may not have more than 0.3% *total* THC on a dry weight basis and no hemp-derived cannabinoid product may have more than 0.4 milligrams of *total* THC per container. 410 ILCS 707/5. By narrowing the definition of hemp, Illinois has expanded what is considered "cannabis."

Once a product is classified as "cannabis," it becomes subject to the CRTA and is unlawful to possess, manufacture, or deliver. 720 ILCS 550/4 to 5.1. The only pathway to lawfully manufacture or sell cannabis products is through Illinois's

closed-loop cannabis licensing scheme. Dispensaries may not purchase cannabis or cannabis-infused products from outside Illinois, nor may they acquire cannabis products from non-licensed entities. 410 ILCS 705/1-10; 410 ILCS 705/15-70(p)(3). And any hemp incorporated into cannabis products must be cultivated by a licensed cannabis business establishment. 8 Ill. Admin. Code § 1300.40(c). However, no licenses are available to the Hemp Industry Plaintiffs.

Therefore, the scheme sweeps federally legal hemp products into Illinois's definition of "cannabis." Coupled with the Hemp Industry Plaintiffs' inability to seek any license, the practical effect is intrastate protectionism and a substantial burden on interstate commerce. Illinois effectively bans out-of-state hemp that is otherwise federally legal, leaving Illinois's currently licensed cannabis companies to fill the void and seize the hemp market. *See Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 351–52 (1977) (restricting out-of-state competition is a form of interstate discrimination); *Dean Milk Co. v. City of Madison*, 340 U.S. 349, 354 (1951) ("In thus erecting an economic barrier protecting a major local industry against competition from without the State, Madison plainly discriminates against interstate commerce.").

Out-of-state participants in the Illinois hemp industry and market, including some of the Hemp Industry Plaintiffs, face a fork in the road: either (a) bear the cost of moving their out-of-state operations into Illinois, becoming licensed—which is currently impossible—and thereafter purchasing only Illinois products and limiting sales to within Illinois, notwithstanding whether out-of-state operations may be less

expensive; or (b) shut down their Illinois hemp operations altogether. (Katz Decl., Ex. A ¶¶ 36–39, 54.)

And because no licenses are available to allow them to continue operating legally, the Hemp Industry Plaintiffs and others currently operating in-state in Illinois's hemp industry will have to move their operations to another state if they wish to continue participating in the national hemp market.

These options are the result of Illinois limiting the farming, manufacturing and sales of a federally legal product to a select in-state group—existing license holders—and blocking entry to that select group by making new licenses unavailable. These limitations constitute unconstitutional burdens on interstate commerce and economic protectionism. The Court should find that the Hemp Industry Plaintiffs have shown a likelihood of success on the merits of their dormant Commerce Clause claim. *See Granholm*, 544 U.S. at 475 (expense of moving operations in-state may be "prohibitive" and requiring business operations to be performed in-state is "particular[ly] suspicio[us]").

Multiple courts have found similar state hemp laws discriminatory. *See, e.g.*, *Fresh Farms E Liquid LLC v. Tischler*, No. 3:26-cv-2059, 2026 WL 2873791, at *3 (N.D. Ohio Sept. 24, 2026) (holding that Ohio's hemp law likely violates the dormant Commerce Clause); *Delta Beverage, Inc. v. Canepa*, No. 3:26-cv-1793, 2026 WL 2617770, at *5 (N.D. Ohio Sept. 4, 2026) (same); *Loki Brands, LLC v. Platkin*, No. 24-9389-ZNQ-TJB, 2024 WL 4457485, at *10 (D.N.J. Oct. 10, 2024) (finding that New Jersey's hemp scheme favored New Jersey economic interests over out-of-state

interests); *North Fork Distrib. I, LLC v. Wensinger*, No. 26CV312 (Ohio Ct. Common Pleas, Sandusky Cty., May 14, 2026) (granting preliminary injunction enjoining enforcement of Ohio's hemp law as unconstitutional under the dormant Commerce Clause) (attached hereto as Ex. F).

Notably, in *Titan Logistics Group LLC v. Tischler*, plaintiffs challenged Ohio's hemp law—which is almost identical to the Hemp Act—and moved for a TRO. 838 F. Supp. 3d 724 (N.D. Ohio 2026). The district court granted the motion, finding that plaintiffs were likely to succeed on the merits of their dormant Commerce Clause claim because Ohio's scheme prohibited out-of-state companies from offering their federally lawful products for sale "unless they source and distribute those products solely in Ohio." *Id.* at 730. The court further reasoned that if plaintiffs wanted to continue accessing the Ohio market, they would need to move operations to Ohio—another dormant Commerce Clause violation. *Id.* at 730–31. The court thereafter granted a preliminary injunction for the same reasons. *Titan Logistics Grp. LLC v. Tischler*, 838 F. Supp. 3d 733, 737–40 (N.D. Ohio 2026).

Ohio appealed and moved to stay the injunction pending appeal. The Sixth Circuit denied the motion to stay. *Titan Logistics Grp. LLC v. Tischler*, No. 26-3648, Dkt. 33 at 2 (6th Cir. Sept. 25, 2026) (attached as Ex. G). In its order, the Sixth Circuit explained that two aspects of Ohio's current marijuana regime presented dormant Commerce Clause problems: (1) "Ohio dispensaries [could] obtain a covered product from an Ohio source but not from an otherwise comparable out-of-state source"; and (2) the law required that licensed cultivators, processors, and dispensaries may only

obtain products from other license holders with facilities in Ohio, with the effect being that "products sold through Ohio's licensed market (its sole lawful market) must be processed or cultivated in Ohio rather than out of state." *Id.* at 3–4.

The Hemp Industry Plaintiffs' challenge to the Hemp Act is on all fours. Illinois's regime requires that all cannabis products must be sourced from within Illinois, 410 ILCS 705/15-70(c), (p)(3), and any hemp that is contained in any cannabis product must be cultivated in Illinois, 8 Ill. Admin. Code § 1300.40(c). Dispensaries also may not acquire cannabis from cultivators, craft growers, infusers, or other dispensaries that are not licensed by the respective state agencies. 410 ILCS 705/1-10. Cultivators, craft growers, infusers, and dispensaries must also be licensed, but no licenses are available to the Hemp Industry Plaintiffs even if they wanted to participate in the Illinois hemp market. By redefining hemp, Illinois has created a protective barrier around Illinois's own cannabis and hemp markets, treating in-state economic interests more favorably than out-of-state interests. This is textbook discrimination against interstate commerce.

**b. Illinois's regulatory scheme fails narrow tailoring.**

Where a state law discriminates against out-of-state economic interests, "the law can be sustained only on a showing that it is narrowly tailored to advance a legitimate local purpose." *Tenn. Wine*, 588 U.S. at 518. "The burden is on the State to show that the discrimination is demonstrably justified." *Granholm*, 544 U.S. at 492. The Hemp Industry Plaintiffs do not dispute that public health and safety are legitimate governmental interests, but there are numerous less restrictive means to

address those considerations here. The State could impose age restrictions, labeling and packaging rules, potency disclosures, or independent laboratory testing for harmful synthetics. (*See* Katz Decl., Ex. A ¶¶ 18, 50; Weddigen Decl., Ex. B ¶ 4; Dedic Decl., Ex. C ¶ 8.) Instead, the State has chosen to shoehorn a federally lawful product into its restrictive closed-loop cannabis regulatory scheme when less restrictive means are available. *See Gov't Suppliers Consolidating Servs., Inc. v. Bayh*, 975 F.2d 1267, 1279–80 (7th Cir. 1992) (rejecting Indiana's public health justifications for a backhaul ban because Indiana had not "demonstrate[d] that such risks . . . could not be avoided by means less drastic"); *Anheuser-Busch, Inc. v. Schnorf*, 738 F. Supp. 2d 793, 809–10 (N.D. Ill. 2010) (finding that Illinois's regulatory objective could have been achieved through reasonable non-discriminatory means).

### 2. Illinois's hemp regulations fail *Pike* balancing because the burden on commerce is direct and clearly excessive.

As explained above, Illinois's new regulation of hemp discriminates and is not narrowly tailored. The Court need not go any further. *See NA Main Street LLC v. Cook*, 508 F. Supp. 3d 320, 328 (S.D. Ind. 2020) (explaining that the analysis may end once the law is found to discriminate). But even under the more forgiving *Pike* balancing, the Hemp Act and the broader regulatory scheme implementing it are unconstitutional. When a "statute regulates evenhandedly to effectuate a legitimate local public interest, and its effects on interstate commerce are only incidental, it will be upheld unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits." *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142 (1970); *see also Nat'l Pork Producers Council v. Ross*, 598 U.S. 356, 394–97, 402 (2023)

(Roberts, C.J., concurring in part and dissenting in part) (reaffirming *Pike* balancing and explaining that the Ninth Circuit did not consider compliance costs).

Here, the burdens on interstate commerce far outweigh the local benefits. Public health and safety are indeed important local benefits. But those objectives can be achieved in any number of different ways than what the State has chosen here. On the other end of the scale, the burdens on interstate commerce are immense. Out-of-state hemp businesses lose access to a profitable market or would be forced to expend capital to move operations in-state; local hemp businesses will be forced to close down or move shop out-of-state causing a decrease in competition within Illinois; and Illinois hemp companies cannot source hemp from other states where the product may be cheaper, thus passing the costs onto consumers. (*See* Katz Decl., Ex. A ¶¶ 27, 46–47; Weddigen Decl., Ex. B ¶ 9; Dedic Decl., Ex. C ¶¶ 11–13; Jaber Decl., Ex. E ¶¶ 6, 11.) These burdens on interstate commerce are clearly excessive and violate the dormant Commerce Clause. *See Nat'l Solid Wastes Mgmt. Ass'n v. Meyer*, 63 F.3d 652, 663 (7th Cir. 1995) (recognizing that Wisconsin's environmental policy was substantially important, but that it imposed "a very significant burden on interstate commerce").

Where courts have rejected dormant Commerce Clause challenges to other state hemp statutes, the facts are distinguishable. In *C.Y. Wholesale, Inc. v. Holcomb*, 965 F.3d 541, 548 (7th Cir. 2020), the court rejected plaintiff's argument that Indiana's hemp act interfered with the shipping of hemp across the State. The Hemp Industry Plaintiffs are not arguing that the Hemp Act restricts the transportation of

hemp across Illinois, nor could they: the Hemp Act does not "prohibit the transportation or shipment of hemp or hemp products produced in accordance with subtitle G of the Agriculture Marketing Act of 1946 (7 U.S.C. 1639o et seq.) through the State." 410 ILCS 707/65(b). In *Northern Virginia Hemp & Agriculture LLC v. Virginia*, 125 F.4th 472, 488 (4th Cir. 2025), plaintiffs conceded before the district court that Virginia's hemp law did not favor the State's economic interests and thus did not discriminate. With that concession, the Fourth Circuit went on to hold that, "for the same reasons [the law] does not discriminate against out-of-state interests," the law did not place undue burdens on out-of-state interests. *Id.* at 497. In contrast, the Hemp Industry Plaintiffs do not concede the points conceded in *Northern Virginia*. The Hemp Act, in conjunction with the CRTA, favors Illinois's pre-existing licensed cannabis industry and shields it from competition. Moreover, the Hemp Industry Plaintiffs have presented evidence that Illinois's new regime disadvantages out-of-state interests and unconstitutionally burdens interstate commerce. (*See* Katz Decl., Ex. A ¶¶ 15–16, 26–27, 36–40, 47; Jaber Decl., Ex. E ¶ 11; Weddigen Decl., Ex. B ¶ 10; Dedic Decl., Ex. C ¶ 13; Hammad Decl., Ex. D ¶ 8.)

Next, in *Green Room LLC v. Wyoming*, 157 F.4th 1196, 1210 (10th Cir. 2025), plaintiffs did not contend that the Wyoming statute discriminated against interstate commerce. Here, the Hemp Industry Plaintiffs do. The *Green Room* court also found that plaintiffs had not plausibly alleged that Wyoming's criminalization of hemp excessively burdened interstate commerce by effectively prohibiting its transportation through Wyoming. *Id.* Again, the Hemp Industry Plaintiffs here do

not allege that Illinois restricts the transportation of hemp. Finally, in *AK Industrial Hemp Association, Inc. v. Alaska Department of Natural Resources*, Alaska amended its industrial hemp regulations such that no hemp product could contain any delta-9 THC. 803 F. Supp. 3d 862, 869 (D. Alaska 2025). On an uncontested motion for summary judgment, the court found that the regulation did not directly discriminate against interstate commerce because it applied to all hemp retailers. *Id.* at 874. The court further found that plaintiffs had not presented evidence—because they did not respond to the motion for summary judgment—which proved that the burden on interstate commerce outweighed any local benefit. *Id.* Here, the Hemp Industry Plaintiffs have demonstrated and put forth evidence that Illinois's regulatory scheme discriminates against out-of-state interests, is not narrowly tailored, and fails *Pike* balancing.

For all these reasons, the Hemp Industry Plaintiffs have shown a likelihood of success on the merits of their dormant Commerce Clause claim.

## B. THE HEMP INDUSTRY PLAINTIFFS FACE IMMINENT IRREPARABLE HARM.

Irreparable harm is established here. The Hemp Industry Plaintiffs have established that they will suffer a substantial, unquantifiable loss of business, and in some cases a complete shutdown of business. (Katz Decl., Ex. A ¶¶ 36–40, 54–55; Weddigen Decl., Ex. B ¶¶ 12–14; Dedic Decl., Ex. C ¶¶ 15–17; Hammad Decl., Ex. D ¶¶ 12–13; Jaber Decl., Ex. E ¶ 12.) *See Wisconsinites for Alternatives to Smoking & Tobacco, Inc. v. Casey*, 172 F.4th 976, 990 (7th Cir. 2026) (holding that lost revenue and substantial financial harm are irreparable where "plaintiffs would be forced to

shut down while awaiting trial"); *Life Spine, Inc. v. Aegis Spine, Inc.*, 8 F.4th 531, 546 (7th Cir. 2021) (unquantifiable loss in business is irreparable harm). The Hemp Industry Plaintiffs cannot avoid that harm by obtaining licenses before November 12, 2026, which is not only impracticable, but impossible given the unavailability of any necessary license. Moreover, violations of the Constitution constitute irreparable harm justifying injunctive relief. *See GoodCat, LLC v. Cook*, 202 F. Supp. 3d 869, 918 (S.D. Ind. 2016) (finding that the likely violation of dormant Commerce Clause "rises to the level of irreparable harm").

### C. NO LEGAL REMEDY IS SOUGHT NOR AVAILABLE.

The Hemp Industry Plaintiffs seek only a declaratory judgment and an injunction, both equitable remedies, not legal. *See Simon v. Coop. Educ. Serv. Agency #5*, 46 F.4th 602, 609 (7th Cir. 2022) (explaining that declaratory judgments and injunctive relief are equitable). Nor does the Eleventh Amendment permit legal remedies against the State. *See McDonough Assocs., Inc. v. Grunloh*, 722 F.3d 1043, 1050–51 (7th Cir. 2013). And the Hemp Industry Plaintiffs' injuries would not be adequately remedied through a later damages award. The Hemp Industry Plaintiffs face loss of access to the Illinois market and existing customers for federally legal hemp, inability to sell existing inventory in Illinois, and credible criminal or civil enforcement exposure. (Katz Decl., Ex. A ¶¶ 40, 54; Weddigen Decl., Ex. B ¶¶ 5, 14; Dedic Decl., Ex. C ¶¶ 7, 17; Hammad Decl., Ex. D ¶ 12; Jaber Decl., Ex. E ¶¶ 6–9, 12.) Therefore, traditional legal remedies are inadequate. *See Gov't Suppliers Consolidating Servs., Inc. v. Bayh*, 734 F. Supp. 853, 865 (S.D. Ind. 1990).

### D. THE BALANCE OF EQUITIES WEIGH HEAVIEST WITH THE HEMP INDUSTRY PLAINTIFFS.

The Hemp Industry Plaintiffs have demonstrated that they have a strong likelihood of success on the merits of their dormant Commerce Clause claim. Because of this, the balance of harms need not weigh heavily in their favor. Even so, the Hemp Industry Plaintiffs face greater harm if an injunction is not issued compared to the harm facing Defendants. *See GoodCat*, 202 F. Supp. 3d at 918 ("[A]lthough Indiana has a valid and important interest in seeing that its laws are enforced, the balance of harm to the State or to Indiana consumers does not outweigh the very real and nearly certain economic harm GoodCat will incur absent an injunction."); *Ind. Fine Wine & Spirits, LLC v. Cook*, 459 F. Supp. 3d 1157, 1171 (S.D. Ind. 2020) (finding in dormant Commerce Clause challenge that plaintiff's harms outweighed those of the government defendants).

## CONCLUSION

The Hemp Act and Illinois's broader cannabis regulatory scheme discriminate against out-of-state interests, unnecessarily require in-state presence to sell in Illinois, and unduly burden interstate commerce. Effectively, it will build a protective economic barrier around Illinois and its existing licensed cannabis market. This is something the Constitution does not permit. The Hemp Industry Plaintiffs have shown that they are entitled to a temporary restraining order and a preliminary injunction.

**WHEREFORE**, the Court should grant this motion for temporary restraining order and preliminary injunction and enjoin Defendants from:

- implementing the redefinition of "hemp" in section 5 of the Hemp Act, 410 ILCS 707/5, to reclassify federally legal hemp and hemp-derived products as "cannabis" subject to regulation by the Cannabis Regulation and Tax Act ("CRTA"), 410 ILCS 705/1-1 *et seq.*;

- implementing the 0.4 mg total THC per container limitation in section 5 of the Hemp Act, 410 ILCS 707/5, to classify federally legal products as "cannabis" subject to regulation by the Cannabis Regulation and Tax Act ("CRTA"), 410 ILCS 705/1-1 *et seq.*;

- prohibiting the sale of federally legal hemp and hemp-derived products by out-of-state companies into Illinois;

- prohibiting Illinois purchasers from acquiring hemp from sources outside Illinois;

- requiring companies that cultivate, manufacture, distribute, or sell federally legal hemp and hemp-derived products to obtain the licenses specified in the CRTA for transactions in cannabis; and

- otherwise enforcing the Hemp Act or the CRTA in any way to restrict transactions in federally legal hemp and hemp-derived products, and grant such other relief as is equitable and just.

Dated: November 5, 2026

Respectfully submitted,

Illinois Healthy Alternatives Association; MNG 2005, Inc.; Green Street 79 LLC; Life Element, LLC; OPT Holdings Technologies LLC; and Zada Ventures LLC, d/b/a Cubbington's Cabinet

By: /s/ Michael I Rothstein
One of Their Attorneys

Michael I Rothstein (ARDC 6195991)
Nathaniel G. Goodman (ARDC 6339039)
Jonathan P. Parts (ARDC 6349744)
TABET DIVITO & ROTHSTEIN LLC
209 S. LaSalle St., Suite 700
Chicago, IL 60604
mrothstein@tdrlaw.com
ngoodman@tdrlaw.com
jparts@tdrlaw.com