**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| Illinois Healthy Alternatives Association; MNG 2005, Inc.; Green Street 79 LLC; Life Element, LLC; OPT Holdings Technologies LLC; Zada Ventures LLC, d/b/a Cubbington's Cabinet,<br><br>Plaintiffs | |
| v. | No. 26 C 13799 |
| Kwame Raoul, Attorney General of Illinois; Jerry F. Costello II, Director, Illinois Department of Agriculture; Mario Treto, Jr., Secretary, Illinois Department of Financial and Professional Regulation; Brendan Kelly, Director, Illinois State Police; David Harris, Director, Illinois Department of Revenue; Sameer Vohra, M.D., Director, Illinois Department of Public Health,<br><br>Defendants. | Hon. Martha M. Pacold |

**DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

KWAME RAOUL
Attorney General of Illinois

R. Doug Rees
Richard S. Huszagh
Aaron T. Dozeman
Lee B. Stark
Assistant Attorneys General
Office of the Illinois Attorney General

# Table of Contents

Introduction and Summary of Argument ....................................................................... 1

Background ..................................................................................................................... 2

A. The Intoxicating Hemp Loophole ................................................................. 3

B. Illinois Authorizes Production and Sale of Cannabis Products ........................ 4

C. The Industry's Exploitation of the Intoxicating Hemp Loophole ..................... 5

D. Congress Passes Amendments To Close The Intoxicating Hemp Loophole ..... 7

E. Illinois Separately Bans Intoxicating Hemp ................................................... 7

F. Current Status of Federal Law ......................................................................... 8

G. Plaintiffs' Action ............................................................................................. 9

Argument ......................................................................................................................... 9

I. Standards for Granting a TRO .............................................................................. 9

II. Plaintiffs Have Not Established a Likelihood of Success. ..................................... 10

A. Plaintiffs Lack Standing for Most of the Relief They Seek. ............................ 10

B. B. Plaintiffs Do Not Claim that the Illinois Hemp Amendments Are Preempted by Federal Law. ............................................................... 12

C. Illinois Hemp Amendments Do Not Violate the Dormant Commerce Clause. ................................................................................................. 12

III. Plaintiffs Will Not Be Irreparably Injured by Enforcement of the Hemp Act. ....... 23

IV. The Balance of the Equities and Public Interest Favor Denying Plaintiffs' Motion. ............................................................................................................ 24

Conclusion ...................................................................................................................... 25

## Table of Cases

**Cases**

*AK Indus. Hemp Ass'n, Inc. v. Alaska Dep't of Nat. Res.*,
803 F. Supp. 3d 862 (D. Alaska 2025) .......... 18

*Alliant Energy Corp. v. Bie*,
336 F.3d 545 (7th Cir. 2003) .......... 22

*Ariz. Pub. Integrity Alliance Inc. v. Bennett*,
No. 14-cv-1044, 2014 WL 3715130 (D. Ariz. Jun. 23, 2014) .......... 30

*Ass'n for Accessible Medicines v. Raoul*,
805 F. Supp. 3d 854 (N.D. Ill. 2025) .......... 22

*Baude v. Heath*,
538 F.3d 608 (7th Cir. 2008) .......... 20

*Bio Gen LLC v. Sanders*,
142 F.4th 591 (8th Cir. 2025) .......... 14

*Breard v. Alexandria*,
341 U.S. 622 (1951) .......... 16

*Brown & Williamson Tobacco Corp. v. Pataki*,
320 F.3d 200 (2d Cir. 2003) .......... 25

*C.Y. Wholesale, Inc. v. Holcomb*,
965 F.3d 541 (7th Cir. 2020) .......... 1, 4, 15, 24

*Chamber of Com. of the U.S. of Am. v. Bonta*,
62 F.4th 473 (9th Cir. 2023) .......... 30

*Chi. Hous. Auth. v. Turner*,
No. 25-cv-12670, 2025 WL 2972665 (N.D. Ill. Oct. 20, 2025) .......... 11, 29

*City of Los Angeles v. County of Kern*,
581 F.3d 841 (9th Cir. 2009) .......... 13

*Davis v. FEC*,
554 U.S. 724 (2008) .......... 13

*De Buono v. NYSA-ILA Med. & Clinical Servs. Fund*,
520 U.S. 806 (1997) .......... 19

*Dep't of Revenue of Kentucky v. Davis*,
553 U.S. 328 (2008) .......... 15

*e360 Insight v. Spamhaus Project*,
500 F.3d 594 (7th Cir. 2007) .......... 12

*Elec. Power Supply Ass'n v. Star*,
904 F.3d 518 (7th Cir. 2018) .......... 24

*Fednav, Ltd. v. Chester*,
547 F.3d 607 (6th Cir. 2008) .......... 24

*Finch v. Treto*,
82 F.4th 572 (7th Cir. 2023) .......... 4, 28

*General Motors Corp. v. Tracy*,
519 U.S. 278 (1997) .......... 16

*Goldfarb v. Va. State Bar*,
421 U.S. 773 (1975) .......... 26

*Gonzales v. Raich*,
545 U.S. 1 (2005) .......... 3

*Green Room LLC v. Wyoming*,
157 F.4th 1196 (10th Cir. 2025) .......... 3, 21

*Houlton Citizens' Coal. v. Town of Houlton*,
175 F.3d 178 (1st Cir.1999) .......... 14

*Huron Portland Cement Co. v. City of Detroit*,
362 U.S. 440 (1960) .......... 16

*Jones v. Markiewicz-Qualkinbush*,
842 F.3d 1053 (7th Cir. 2016) .......... 29

*Kay v. Austin*,
621 F.2d 809 (6th Cir. 1980) .......... 30

*Keweenaw Bay Indian Cmty. v. Khouri*,
549 F. Supp. 3d 662 (W.D. Mich. 2021) .......... 24

*Korte v. Sebelius*,
735 F.3d 654 (7th Cir. 2013) .......... 12

*Liberty Disposal, Inc. v. Scott*,
648 F. Supp. 2d 1047 (N.D. Ill. 2009) .......... 14

*MacDonald v. President of N.J. State Bd. of Med. Examiners*,
189 F.4th 343 (3d Cir. 2026) .......... 26

*Maine v. Taylor*,
477 U.S. 131 (1986)........................................................................................... 17

*Maryland v. King*,
567 U.S. 1301 (2012)......................................................................................... 31

*McKenzie v. City of Chicago*,
118 F.3d 552 (7th Cir. 1997) ............................................................................. 12

*Merrion D. Jicarilla Apache Tribe*,
455 U.S. 130 (1982)..................................................................................... 24, 25

*Minerva Dairy, Inc. v. Harsdorf*,
905 F.3d 1047 (7th Cir. 2018) ........................................................................... 21

*Minnesota v. Clover Leaf Creamery Co.*,
449 U.S. 456 (1981)........................................................................................... 16

*Minnesota v. Clover Leaf Creamery*,
449 U.S. 456 (1981)........................................................................................... 22

*Mintz v. Chiumento*,
724 F. Supp. 3d 40 (N.D.N.Y. 2024)................................................................. 30

*N. Va. Hemp & Agric., LLC v. Virginia*,
125 F.4th 472 (4th Cir. 2025) ...................................................................... passim

*Nat'l Ass'n of Optometrists & Opticians v. Harris*,
682 F.3d 1144 (9th Cir. 2012) ........................................................................... 20

*Nat'l Pork Producers Council v. Ross*,
598 U.S. 356 (2023)........................................................................................... 15

*Nat'l Solid Wastes Mgmt. Ass'n v. Meyer*,
63 F.3d 652 (7th Cir. 1995) ............................................................................... 21

*Nken v. Holder*,
556 U.S. 418 (2009)........................................................................................... 30

*Northeast Patients Group v. United Cannabis Patients & Caregivers of Maine*,
45 F.4th 542 (1st Cir. 2022)............................................................................... 28

*Norwegian Cruise Line Holdings Ltd v. State Surgeon Gen., Fla. Dep't of Health*,
50 F.4th 1126 (11th Cir. 2022) ........................................................................... 23

*Novartis Pharma. Corp. v. Hanaway*,
180 F.4th 1097 (8th Cir. 2026) ........................................................................... 22

*Owner-Operator Indep. Drivers Ass'n, Inc. v. Holcomb*,
990 F.3d 565 (7th Cir. 2021) .......... 20

*Park Pet Shop, Inc. v. City of Chicago*,
872 F.3d 495 (7th Cir. 2017) .......... 15, 17, 19, 20

*Peridot Tree WA, Inc. v. Wash. State Liquor & Cannabis Control Bd.*,
162 F.4th 1179 (9th Cir. 2026) .......... 28

*Philadelphia v. New Jersey*,
437 U.S. 617 (1978) .......... 16

*Pike v. Bruce Church, Inc.*,
397 U.S. 137 (1970) .......... 17, 20, 21

*Praefke Auto Elec. & Battery Co. v. Tecumseh Prods. Co.*,
123 F. Supp. 2d 470 (E.D. Wis. 2000) .......... 29

*Quik Payday, Inc. v. Stork*,
549 F.3d 1302 (10th Cir. 2008) .......... 26

*Rizzo v. Goode*,
423 U.S. 362 (1976) .......... 31

*Roland Mach. Co. v. Dresser Indus., Inc.*,
749 F.2d 380 (7th Cir. 1984) .......... 12

*Susan B. Anthony List v. Driehaus*,
573 U.S. 149 (2014) .......... 13

*Tenn. Scrap Recyclers Ass'n v. Bredesen*,
556 F.3d 442 (6th Cir. 2009) .......... 23

*Titan Logistics Group LLC v. Tischler*,
838 F. Supp. 3d 724 (N.D. Ohio 2026) .......... 18

*Titan Logistics Grp. LLC v. Tischler*,
No. 26-3648 (6th Cir. Sept. 25, 2026) .......... 19, 28

*Trump v. CASA, Inc.*,
606 U.S. 831 (2025) .......... 12

*United States v. Abdulaziz*,
998 F.3d 519 (1st Cir. 2021) .......... 3

*Wine & Spirits Retailers, Inc. v. Rhode Island*,
481 F.3d 1 (1st Cir. 2007) .......... 14

*Winter v. Nat'l Res. Def. Council, Inc.*,
555 U.S. 7 (2008) ........ 11

**Statutes**

21 U.S.C. § 802(16) ........ 3

410 ILCS 705/10-5 ........ 4

410 ILCS 705/1-10 ........ 5, 7

410 ILCS 705/15-85(a) ........ 4

410 ILCS 705/5-10 ........ 4

410 ILCS 707/10 ........ 7

410 ILCS 707/1-999 ........ 7

410 ILCS 707/20 ........ 5

410 ILCS 707/5 ........ 8

410 ILCS 707/65(b) ........ 4

505 ILCS 89/10 ........ 5

720 ILCS 550/5 ........ 5

Pub. L. 119-37, § 781 ........ 7

Pub. L. 119–37, div. B, title VII, § 781(1), (2), Nov. 12, 2025, 139 Stat. 558 ........ 8

Pub. L. No.115-334, §10113, 132 Stat. 4490, 4908-14 ........ 3

Public Act 104-463 ........ 7

**Other Authorities**

Dana Rebik & Eli Ong, *Hopewell Brewing, other Illinois businesses face significant losses as new hemp law looms,* WGN TV (Nov. 9, 2026), https://wgntv.com/news/chicago-news/hopewell-brewing-other-illinois-businesses-face-significant-losses-as-new-hemp-law-looms/ ........ 7

*Defining Hemp: A Fact Sheet*, www.congress. gov/crs-product/R44742 ........ 1

Fran Spielman & Mitchell Armentrout, *With Johnson, Pritzker at odds over a crackdown on hemp products, bill regulating those products dies*, CHI. SUN-TIMES (Jan. 6, 2025),

https://chicago.suntimes.com/cannabis/2025/01/06/johnson-pritzker-hemp-products-laws-marijunana-business-licenses-quinn-tabares-midway-airport .................................................. 6

*Ill. S. Floor Deb*., 103d Gen. Assemb. (Ill. May 26, 2024), https://www.ilga.gov/Documents/Senate/transcripts/Strans103/10300120.pdf ......................... 6

*Ill. S. Floor Deb*., 104th Gen. Assemb. (Ill. May 14, 2023), www.ilga.gov/Documents/Senate/transcripts/Strans104/10400115.pdf .................................. 6

Press Release, Office of Governor J.B. Pritzker, *Gov. Pritzker Bans the Sale of Intoxicating Hemp to Minors, Bolsters Equity and Oversight in the Cannabis Industry* (May 31, 2026), https://gov.illinois.gov/news/press-release.32614.html............................................................ 6

Stephanie Zimmerman & Tom Schuba, *Hemp products often mislabeled, posing potential danger to consumers, Chicago researcher finds*, CHI. SUN-TIMES (Mar. 20, 2024), https://chicago.suntimes.com/the-watchdogs/2024/03/20/hemp-cbd-edibles-weed-THC-delta8-danger-uic-bash........................................................................................................ 6

**Regulations**

8 Ill. Admin. Code § 1200.20(f) ......................................................................................... 5

8 Ill. Admin. Code § 1300.40 ............................................................................................. 5

8 Ill. Admin. Code § 1300.40(c)......................................................................................... 5

8 Ill. Admin. Code § 1300.40(c)......................................................................................... 4

8 Ill. Admin. Code §1200.20(j)........................................................................................... 5

## Introduction and Summary of Argument

Two different types of the Cannabis sativa plant are generally used for different purposes. The psychoactively potent version, often referred to as marijuana, or just cannabis, has been used for centuries as an intoxicant. Industrial hemp, by contrast, is generally used for non-intoxicating purposes. *See C.Y. Wholesale, Inc. v. Holcomb*, 965 F.3d 541, 544 (7th Cir. 2020) ("Industrial hemp is a product derived from the cannabis plant, but it is distinguishable from conventional marijuana in one crucial respect: it has a much lower concentration of tetrahydrocannabinol (THC), the principal psychoactive constituent of cannabis."); *Defining Hemp: A Fact Sheet*, www.congress. gov/crs-product/R44742.

For several years, plaintiffs and businesses like them have taken advantage of a loophole in federal law that was intended to decriminalize the production of hemp for non-intoxicating uses, but inadvertently allowed it to be processed into intoxicating products. In Illinois, these products were sold outside the heavily regulated system allowing the cultivation, production, and sale of psychotropic cannabis products for adult recreational use. One year ago, Congress passed a law to close the federal loophole for intoxicating hemp, effective on November 12, 2026, by narrowing the statutory definition of "hemp" to exclude intoxicating products. The Illinois legislature then amended its laws to mirror this definition, effective on the same date, thereby banning all intoxicating products made with hemp. Two months ago, Congress postponed the effective date of the federal loophole-closing provision by one month, to December 11, 2026. But Illinois' law took effect as scheduled on November 12, 2026.

Faced with the imminent application of the Illinois statutes forbidding intoxicating hemp products that are not yet illegal under federal law, plaintiffs brought this action challenging these statutes under the Dormant Commerce Clause. Plaintiffs simultaneously moved for entry of a TRO and preliminary injunction allowing the production and sale of intoxicating hemp in Illinois.

As described below, the critical flaw in plaintiffs' motion and Dormant Commerce Clause claim is that Illinois law prohibits *all* persons, regardless of where they do business, from producing or selling intoxicating hemp products in Illinois. In-state and out-of-state interests are treated equally. No one can produce or sell such products in Illinois. Without any discrimination between them, plaintiffs' Dormant Commerce Clause claim lacks merit as a matter of law. That conclusion is bolstered by the fact that federal law expressly provides for state regulation of hemp production, including regulation that is more strict than federal law. Additional deficiencies in plaintiffs' action and motion are detailed below.

**Background**

This case involves the interplay between Illinois and federal law relating to products made from Cannabis sativa plants. As relevant here, these plants are used to produce both psychoactive products, which Illinois law allows to be made and sold for medical and adult recreational use even though most of them are criminally prohibited under federal law, and non-psychoactive products made from hemp, which both Illinois and federal law allow. The immediate focus of this case is temporarily divergent definitions of "hemp" under federal and Illinois law. As of November 12, 2026, Illinois law prohibits the use of hemp to make or sell psychoactive products in Illinois, while federal law, until December 11, 2026, does not prohibit that use.

Three types of products are created from the Cannabis sativa plant: "Non-Intoxicating Hemp Products," such as CBD oils, which are not in dispute here; psychoactive "Intoxicating Hemp Products" made from industrial hemp grown according to federal agricultural requirements; and psychoactive "Cannabis Products" made from cannabis plants that are *not* industrial hemp. Plaintiffs make and sell Intoxicating Hemp Products, which Illinois law prohibits as of November 12, 2016, but current federal law will not prohibit until December 11, 2026. That difference results from temporarily divergent definitions of "hemp" under federal and Illinois law, described below.

### A. The Intoxicating Hemp Loophole

Cannabis has a lengthy history of regulation in this country at both the state and federal level. *See Gonzales v. Raich*, 545 U.S. 1, 11 & n.14 (2005) (noting federal and state regulation beginning in 1930s). In 1970, Congress enacted the Controlled Substances Act ("CSA"), which classified cannabis (marijuana) as a Schedule I drug. *Id.* at 14. The CSA's definition did not distinguish between cannabis and hemp, so hemp "was a prohibited controlled substance under federal law." *Green Room LLC v. Wyoming*, 157 F.4th 1196, 1203 (10th Cir. 2025). Accordingly, for several decades it was illegal under federal law to grow, possess, or use any cannabis plants or products (including hemp) derived from them. *N. Va. Hemp & Agric., LLC v. Virginia*, 125 F.4th 472, 484 (4th Cir. 2025); *Green Room*, 157 F.4th at 1203.

In 2018, Congress enacted the Agricultural Improvement Act of 2018 ("Farm Bill"), which exempted "hemp" (including derivatives and extracts) from the definition of marijuana. Pub. L. No.115-334, §10113, 132 Stat. 4490, 4908-14 (codified at 7 U.S.C. §§1639o-1639s). In passing this legislation, Congress intended to legalize the cultivation of industrial hemp for agricultural purposes. *See United States v. Abdulaziz*, 998 F.3d 519, 528 (1st Cir. 2021) (describing legislative history). The Farm Bill defined "hemp" to mean parts of the plant with a "*delta-9* [*THC*] concentration of not more than 0.3 percent on a *dry weight basis*." 7 U.S.C. § 1639o(1)) (emphasis added); *see also* 21 U.S.C. § 802(16) (defining "marihuana"). But by defining "hemp" based on a maximum dry weight of delta-9 THC, the Farm Bill unintentionally gave rise to an industry that exploited this loophole to produce psychoactive products that met the federal definition of "hemp" but had a significant *total* THC content and were not covered by state criminal or civil laws. *See N. Va. Hemp & Agric.*, 125 F.4th at 483.[1]

---

[1] *See also* Congressional Research Staff, *The 2018 Farm Bill's Hemp Definition and Legal Challenges to State Laws Restricting Certain THC Products*, www.congress.gov/crs-product/R48637; Elena Schmidt, *Comparing Exotic Cannabinoids: Delta-9 THC, Delta-8, Delta-10, HHC, HHCP, THCOa & THCP*, ACS Laboratory (Dec. 10, 2024), www.acslab.com/cannabinoids/comparing-exotic-cannabinoids.

The Farm Bill also expressly provided for state regulation of "the production of hemp . . . more stringent" regulation than federal law. 7 U.S.C. §1639p(a)(3)(A); *C.Y. Wholesale*, 965 F.3d at. It also included a narrow preemption clause under which a State may not "prohibit the transportation or shipment of hemp or hemp products . . . through the State." Pub. L. No. 115-334, §10114(b). But Illinois law expressly allows such through-state transportation. 410 ILCS 707/65(b); Dkt. 4. at 20-21.

**B. Illinois Authorizes Production and Sale of Cannabis Products**

Like many States, Illinois in recent years authorized the carefully regulated production and sale of Cannabis Products in Illinois for adult recreational use, even though that is prohibited under the CSA. *See Finch v. Treto*, 82 F.4th 572, 575 (7th Cir. 2023). This system, governed by the Cannabis Regulation and Tax Act ("CRTA"), 410 ILCS 705/1-1, *et seq.*, requires licenses for every step of growing, processing, transporting, and selling regulated Cannabis Products, which exclude any intoxicating substances made from industrial hemp. 410 ILCS 705/10-5; 8 Ill. Admin. Code § 1300.40(c). Under this system, a limited number of licensed retail dispensaries may sell Cannabis Products, but only through in-person transactions where the purchaser's ability to buy them is subject to extensive verification procedures. 410 ILCS 705/15-85(a).

The CRTA establishes an extensive multi-agency licensing framework for the production and sale of Cannabis Products that ensures product safety and prevents product diversion. The Illinois Department of Agriculture ("IDOA") licenses and regulates production and distribution businesses that include cultivation centers, craft growers, infusers, transporters, and testing laboratories. 410 ILCS 705/5-10. The Illinois Department of Financial and Professional Regulation ("IDFPR") licenses and regulates retail dispensaries. *Id.* § 5-15. Critically, all Cannabis Products for sale in an IDFPR dispensary must come from cannabis plants grown by a licensed entity in its locked cultivation area approved by the IDOA, and must be manufactured by an IDOA licensed

cannabis facility using cannabis plants grown by a licensed cultivator or grower. *Id.* § 1-10 (definitions of "dispensing organization," "cannabis," "cultivation center," and "craft grower"); 8 Ill. Admin. Code § 1300.40. Every step of production from "seed-to-sale" is tracked and monitored by IDOA and IDFPR, as well as by the Illinois State Police via a state-owned tracking system. 410 ILCS 705/1-10 (definition of "cannabis plant monitoring system"). All of this is overseen by mandatory 24-hour surveillance cameras that may be monitored by the state agencies. *Id*. Each batch of Cannabis Products must be tested at an IDOA licensed testing laboratory and pass its product safety requirements before moving through the supply chain to an IDFPR-licensed dispensary. *Id*. § 50-5. And each product label and package must be submitted to IDOA for review before being offered for sale. *Id*. § 55-21(a).

Under federal law authority, Illinois also licenses parties to grow industrial hemp on defined plots of land. 505 ILCS 89/10; 410 ILCS 707/20; 8 Ill. Admin. Code §1200.20(j). (This was formerly done under the now-repealed Industrial Hemp Act, 505 ILCS 89/1, and as of November 12, 2026, is now done under the Hemp Act, 410 ILCS 707/20.) But that land, and those plants, cannot be used to produce any intoxicating ingredients in Cannabis Products sold in licensed dispensaries. 8 Ill. Admin. Code §§ 1200.20(f), 1300.40(c). This restriction applies regardless of whether the licensee is from Illinois or another State.

### C. The Industry's Exploitation of the Intoxicating Hemp Loophole

Following the Farm Bill's enactment, the industry quickly flooded the market with a wide range of Intoxicating Hemp Products, including products with various cannabinoids that have psychoactive effects, such as delta-8. Illinois faced that problem because its criminal law, the Cannabis Control Act, did not prohibit the possession or sale of cannabis within the federal and state definition of "hemp," 720 ILCS 550/5, and the CRTA *authorized* the production and sale of Cannabis Products, but no Illinois law *prohibited* the production and sale of Intoxicating Hemp

Products made with "hemp," as defined by federal law.

The Illinois legislature found that this unregulated access to Intoxicating Hemp Products caused serious harm to Illinois residents, especially children and young adults.[2] Because the hemp industry in Illinois has been largely unregulated, Intoxicating Hemp Products often do not accurately describe the psychoactive compounds they contain and are frequently much more potent than they claim to be.[3] And because Intoxicating Hemp Products have historically been sold outside Illinois' regulated cannabis industry, they are "readily available" in places like convenience stores and gas stations, where teenagers have easy access to them.[4] Many of these products, moreover, rely on "bright packaging" and "appealing flavors," targeting unwitting young customers who may not know about the products' deleterious effects.[5] As a result, stories have emerged across Illinois of children and young adults hospitalized after ingesting Intoxicating Hemp Products. For instance, on the Illinois Senate floor, Representative Lightford described an incident where five students at a Chicago high school were hospitalized after consuming a hemp

---

[2] Press Release, Office of Governor J.B. Pritzker, *Gov. Pritzker Bans the Sale of Intoxicating Hemp to Minors, Bolsters Equity and Oversight in the Cannabis Industry* (May 31, 2026), https://gov.illinois.gov/news/press-release.32614.html; *Ill. S. Floor Deb*., 104th Gen. Assemb. (Ill. May 14, 2023), www.ilga.gov/Documents/Senate/transcripts/Strans104/10400115.pdf ("This bill, which was one of our top priorities, was to protect our children.").

[3] Stephanie Zimmerman & Tom Schuba, *Hemp products often mislabeled, posing potential danger to consumers, Chicago researcher finds*, CHI. SUN-TIMES (Mar. 20, 2024), https://chicago.suntimes.com/the-watchdogs/2024/03/20/hemp-cbd-edibles-weed-THC-delta8-danger-uic-bash; Fran Spielman & Mitchell Armentrout, *With Johnson, Pritzker at odds over a crackdown on hemp products, bill regulating those products dies*, CHI. SUN-TIMES (Jan. 6, 2025), https://chicago.suntimes.com/cannabis/2025/01/06/johnson-pritzker-hemp-products-laws-marijunana-business-licenses-quinn-tabares-midway-airport.

[4] *Ill. S. Floor Deb*., 103d Gen. Assemb. (Ill. May 26, 2024), https://www.ilga.gov/Documents/Senate/transcripts/Strans103/10300120.pdf.

[5] *Ill. S. Floor Deb*., 103d Gen. Assemb. (Ill. May 26, 2024), https://www.ilga.gov/Documents/Senate/transcripts/Strans103/10300120.pdf.

gummy from a local smoke shop (not a licensed cannabis dispensary).[6] And Governor Pritzker spoke to the mother of a girl who had been in and out of the hospital for eight months after consuming potent edibles.[7]

### D. Congress Passes Amendments To Close The Intoxicating Hemp Loophole

On November 12, 2025, Congress passed a law closing the Farm Bill's intoxicating hemp loophole, effective one year later. Pub. L. 119-37, § 781, *amending* 7 U.S.C. § 1639o (the "Federal Hemp Amendments"). This law amended the definition of "hemp" to exclude Intoxicating Hemp Products. *Id.* When this law takes effect, Intoxicating Hemp Products will again be illegal nationwide (though Non-Intoxicating Hemp will remain lawful).

### E. Illinois Separately Bans Intoxicating Hemp

Following enactment of the Federal Hemp Amendments, Illinois also banned Intoxicating Hemp Products on the same terms and on the same timeline as federal law. On June 12, 2026, Illinois Governor Pritzker signed Senate Bill 3222, which created the Illinois Hemp Act and amended several statutes, including the CRTA (collectively, the "Illinois Hemp Amendments"). *See* Public Act 104-463; 410 ILCS 707/1-999. This enactment conformed Illinois' definition of "hemp" products to the definition in the Federal Hemp Amendments. Specifically, the Hemp Act prohibits the sale of "cannabis" except as authorized under the CRTA, 410 ILCS 707/10; the CRTA's broad definition of "cannabis" excludes "hemp," 410 ILCS 705/1-10; and the Hemp Act defines "hemp" to exclude products with "more than a combined *total* tetrahydrocannabinol

---

[6] *Ill. S. Floor Deb.*, 103d Gen. Assemb. (Ill. May 26, 2024), https://www.ilga.gov/Documents/Senate/transcripts/Strans103/10300120.pdf; *see* Robert McCoppin, *Hemp-based cannabis overdoses at Chicago high school—linked to neighborhood smoke shop—prompt calls for strict state regulation*, CHI. TRIB. (May 12, 2023), https://www.chicagotribune.com/2023/05/12/hemp-based-cannabis-overdoses-at-chicago-high-school-linked-to-neighborhood-smoke-shop-prompt-calls-for-strict-state-regulation/.

[7] Dana Rebik & Eli Ong, *Hopewell Brewing, other Illinois businesses face significant losses as new hemp law looms,* WGN TV (Nov. 9, 2026), https://wgntv.com/news/chicago-news/hopewell-brewing-other-illinois-businesses-face-significant-losses-as-new-hemp-law-looms/.

concentration of 0.3%," or "more than a per-container *total* of 0.4 milligrams of total tetrahydrocannabinols." 410 ILCS 707/5 (emphasis added).

The Illinois Hemp Amendments went into effect on November 12, 2026. 410 ILCS 707/1-999. As a result, while the CRTA allows businesses licensed under the CRTA to grow cannabis plants that are *not* industrial hemp (i.e., are not grown in accordance with federal agricultural requirements) and to manufacture and sell Cannabis Products made from such plants, the Hemp Act and simultaneous changes in the CRTA closed the state law loophole under which Illinois did not have any ban on, and thus effectively permitted, making and selling Intoxicating Hemp Products in Illinois. Thus, under current Illinois law, *no* retailer (including licensed dispensaries) can sell Intoxicating Hemp Products in Illinois, and *no* person can grow, produce, distribute, or make wholesale sales of Intoxicating Hemp Products in the State. 410 ILCS 707/10; 410 ILCS 705/1-10 (definition of dispensing organization); 8 Ill. Admin Code § 1300.40(c). This applies to in-state and out-of-state businesses alike; no exceptions to this ban exist. 410 ILCS 707/10.

At the same time, plaintiffs and other businesses are not prohibited from distributing and selling Non-Intoxicating Hemp Products, and they may do so without a CRTA license. They may cultivate industrial hemp under federally approved licenses, which in Illinois are issued by IDOA. 410 ILCS 707/20. And they may manufacture Non-Intoxicating Hemp Products (including non-psychoactive "final consumer hemp cannabinoid products" or "industrial hemp products") with either a hemp product manufacturer license issued by IDOA or through an IDOA-approved testing protocol that is available to out-of-state suppliers and laboratories. 410 ILCS 707/10.

**F. Current Status of Federal Law**

The federal law closing the intoxicating hemp loophole was initially slated to take effect on November 12, 2026. Pub. L. 119–37, div. B, title VII, § 781(1), (2), Nov. 12, 2025, 139 Stat. 558. Just two months before that date, however, on September 2, 2026, Congress extended the

effective date of the Federal Hemp Amendments to December 11, 2026. Pub. L. 119-103.

### G. Plaintiffs' Action

On November 5, 2026, one week before the Illinois Hemp Amendments went into effect, plaintiffs filed this suit and moved for a temporary restraining order and preliminary injunction against application of the Illinois statutes prohibiting the production and sale of Intoxicating Hemp Products in Illinois. Dkts. 1, 4. Plaintiffs rely on the fact that the Federal Hemp Amendments have yet to take effect, so that federal law does not currently forbid the production or sale of Intoxicating Hemp Products. Dkt. 1 ¶¶ 47-48. They claim it would violate the Dormant Commerce Clause for Illinois' ban on Intoxicating Hemp Products to apply while the federal ban on these Products is not yet effective. *Id.* ¶¶ 69, 91-93; Dkt. 4 at 14-22. According to plaintiffs, the Illinois Hemp Amendments impermissibly "discriminat[e] against out-of-state economic interests," fail to adopt less restrictive alternatives, and burden interstate commerce "in excess of any putative local benefit." Dkt. 1 ¶¶ 91, 95. Plaintiffs seek to enjoin Illinois' ban on Intoxicating Hemp Products to the extent that it forbids products that remain lawful under federal law. *Id.* ¶ 97.[8]

## Argument

### I. Standards for Granting a TRO

A TRO is short-term, interim injunctive relief to prevent irreparable harm until the court can hold a hearing to consider the merits more fully. *Chi. Hous. Auth. v. Turner*, No. 25-cv-12670, 2025 WL 2972665, at *1–2 (N.D. Ill. Oct. 20, 2025). TROs "are more extreme than the already 'extraordinary remedy' that is a preliminary injunction." *Id.* at *2. A movant seeking a TRO faces a significant burden to show (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm absent an injunction; (3) that the balance of equities favor interim relief; and (4) that such

[8] Plaintiffs' complaint also alleges that the Illinois Hemp Amendments are so irrational that they violate the Equal Protection Clause. Dkt. 1 ¶¶ 99-102. Plaintiffs' motion for a TRO does not raise this claim, and defendants therefore do not address it here.

relief is in the public interest. *Id.*; *see also Winter v. Nat'l Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008) (listing same standards for preliminary injunction).

The court ordinarily employs a "sliding scale" approach when balancing these factors, such that the less likely the plaintiff is to win, the greater must be its showing of irreparable harm, and the more the balance of harms must weigh in its favor. *Roland Mach. Co. v. Dresser Indus., Inc.*, 749 F.2d 380, 387-88 (7th Cir. 1984); *see Korte v. Sebelius*, 735 F.3d 654, 665 (7th Cir. 2013). In addition, any injunctive relief must be "tailored to the scope of the violation" and the specific harm established. *e360 Insight v. Spamhaus Project*, 500 F.3d 594, 604 (7th Cir. 2007).

## II. Plaintiffs Have Not Established a Likelihood of Success.

### A. Plaintiffs Lack Standing for Most of the Relief They Seek.

As a threshold matter, plaintiffs lack standing to seek most of the relief requested in their motion. First, they may seek relief only for themselves, not non-parties, as their complaint and motion purport to do, Dkt. 1 ¶ 97; Dkt. 3 at 2. *Trump v. CASA, Inc.*, 606 U.S. 831, 861 (2025) (a federal court may not grant injunctive relief that is "broader than necessary to provide complete relief to each plaintiff with standing to sue"); *McKenzie v. City of Chicago*, 118 F.3d 552, 555 (7th Cir. 1997). The prayer for relief in Plaintiffs' motion seeks extremely broad relief in favor of *anyone*, such as prohibiting defendants from adopting a definition of "hemp" for Illinois law purposes that differs from the federal law definition. Dkt. 4 at 25. But the Court lacks authority to grant any relief except for parties that establish an individual right to it.

Second, even named plaintiffs seek relief beyond what they have standing to pursue. Standing is established where a plaintiff suffers an "injury in fact" that is caused by the defendant's conduct and is redressable by a favorable judicial decision. *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157-58 (2014). "Standing is not dispensed in gross. Rather, a plaintiff must demonstrate standing for each claim he seeks to press and for each form of relief that is sought." *Davis v. FEC*, 554 U.S. 724, 734 (2008) (cleaned up). At the pleading stage, that burden requires specific

allegations of fact to satisfy each standing element for each plaintiff. *Arcidiacono v. Whitehorn*, 178 F.4th 338, 344 (7th Cir. 2026) ("Where . . . a case is at the pleading stage, the plaintiff must clearly . . . allege facts demonstrating his standing to sue.") (cleaned up). Plaintiffs do not satisfy that jurisdictional requirement for much of the relief they seek.

For example, plaintiffs seek an injunction against "requiring companies that cultivate, manufacture, distribute, or sell federally legal hemp and hemp-derived products to obtain the licenses specified in the CRTA for transactions in cannabis." Dkt. 4 at 25. But no plaintiff alleges that it "cultivates" hemp. Dkt. 1. Further, as described above, the CRTA does not require a license to produce or sell Intoxicating Hemp Products, even if they are currently legal under federal law. Instead, the CRTA and Hemp Act collectively prohibit the production or sale of Intoxicating Hemp Products in Illinois by anyone. So plaintiffs, who do not wish to sell Cannabis Products that are subject to CRTA licenses, are not injured by that prohibition.

Plaintiffs also fail to satisfy prudential standing requirements for bringing a Dormant Commerce Clause claim where they do not allege harm to themselves from any discrimination under Illinois law against out-of-state interests. *See City of Los Angeles v. County of Kern*, 581 F.3d 841, 849 (9th Cir. 2009); *Wine & Spirits Retailers, Inc. v. Rhode Island*, 481 F.3d 1, 11-12 (1st Cir. 2007); *Liberty Disposal, Inc. v. Scott*, 648 F. Supp. 2d 1047, 1052-53 (N.D. Ill. 2009); *but see Houlton Citizens' Coal. v. Town of Houlton*, 175 F.3d 178, 183 (1st Cir.1999) (distinguished in *Wine & Spirits Retailers*, 481 F.3d at 12, as involving facial discrimination against out-of-state interests). Plaintiffs include a trade association and allege that its members "participate in every facet of Illinois' legal hemp industry: growing, manufacturing, distributing, and retailing." Dkt. 1 ¶¶ 5, 75. But they do not allege which association members, if any, are supposedly discriminated against as out-of-state businesses that have commercial dealings in Illinois protected by the Dormant Commerce Clause. Absent such allegations, the Court cannot

simply grant sweeping relief enjoining every aspect of the Illinois laws that plaintiffs challenge, including, among other things, prohibiting the sale of federally legal hemp and hemp-derived products by out-of-state companies into Illinois, Dkt. 4 at 32.

### B. B. Plaintiffs Do Not Claim that the Illinois Hemp Amendments Are Preempted by Federal Law.

Before addressing the constitutional claims that plaintiffs do make, defendants emphasize that plaintiffs do not, and realistically cannot, claim that the aspects of the Illinois Hemp Amendments they challenge are preempted by federal law. Numerous courts have rejected preemption attacks on similar laws. *See, e.g.*, *N. Va. Hemp & Agric.*, 125 F.4th at 496; *Bio Gen LLC v. Sanders*, 142 F.4th 591, 602-03 (8th Cir. 2025); *C.Y. Wholesale*, 965 F.3d at 547. Indeed, as described below, federal law expressly contemplates that States may regulate the "production of hemp" in ways that are "more stringent" than federal law. *See infra* at 19-20.

### C. Illinois Hemp Amendments Do Not Violate the Dormant Commerce Clause.

Plaintiffs' Dormant Commerce Clause claim lacks merit because Illinois forbids *all* production or sale of Intoxicating Hemp Products in Illinois, regardless of whether a person who wants to produce or sell them is located in Illinois or outside the State. State laws that do not discriminate between in-state and out-of-state interests generally do not violate the Dormant Commerce Clause. *See Nat'l Pork Producers Council v. Ross*, 598 U.S. 356, 369-71 (2023); *Park Pet Shop, Inc. v. City of Chicago*, 872 F.3d 495, 502 (7th Cir. 2017). That is the case here.

#### 1. General Dormant Commerce Clause principles

The Constitution gives Congress the authority "to regulate Commerce . . . among the several States." U.S. Const. Art. I, § 8, cl. 3. Even when Congress does not affirmatively exercise that power, the Commerce Clause impliedly prohibits state laws that represent "simple economic protectionism." *Dep't of Revenue of Kentucky v. Davis*, 553 U.S. 328, 341 (2008). The Commerce Clause "was never intended to cut the States off from legislating on all subjects relating to the

health, life, and safety of their citizens, though the legislation might indirectly affect the commerce of the country." *General Motors Corp. v. Tracy*, 519 U.S. 278, 306-07 (1997) (cleaned up). Thus, it does not prohibit a State from establishing a program that directly and effectively advances its local public health interests, even if the program incidentally burdens interstate commerce. *Minnesota v. Clover Leaf Creamery Co.*, 449 U.S. 456, 472 (1981); *Huron Portland Cement Co. v. City of Detroit*, 362 U.S. 440, 443-44 (1960); *Nat'l Paint & Coatings Ass'n v. City of Chicago*, 45 F.3d 1124, 1131 (7th Cir. 1995); *see also General Motors Corp.*, 519 U.S. at 307. The key distinction is between *economic* protectionism and legislation reasonably designed "to protect the social, *as distinguished from the economic*, welfare of a community." *Breard v. Alexandria*, 341 U.S. 622, 640 (1951) (emphasis added), *separate holding abrogated*, *Vill. of Schaumburg v. Citizens for a Better Env't*, 444 U.S. 620, 631-32 (1980). "The crucial inquiry, therefore, must be directed to determining whether [a law] is basically a protectionist measure, or whether it can fairly be viewed as a law directed to legitimate local concerns, with effects upon interstate commerce that are only incidental." *Philadelphia v. New Jersey*, 437 U.S. 617, 624 (1978).

In light of this organizing principle, precedent under the Dormant Commerce Clause establishes that a state law is not unconstitutional unless it (1) it patently discriminates against interstate commerce without serving a legitimate local purpose that could not be served as well by available nondiscriminatory means, *Philadelphia*, 437 U.S. at 623-24; *Maine v. Taylor*, 477 U.S. 131, 151-52 (1986); or (2) regulates even-handedly to effectuate a legitimate local public interest, but its incidental burdens on interstate commerce are clearly excessive in relation to its putative local benefits, *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142 (1970); *see also Park Pet Shop*, 872 F.3d at 501-02. Plaintiffs advance both theories. Neither has merit.

#### 2. The Hemp Act Does Not Discriminate Against Out-of-State Interests.

As described above, the Illinois Hemp Amendments (i.e., the Hemp Act and amended

CRTA) collectively prohibit the production or sale of *all* Intoxicating Hemp Products in Illinois. That is true even if they are made from industrial hemp grown in Illinois or produced in a facility in Illinois. 410 ILCS 707/10; 8 Ill. Admin Code § 1300.40(c). Neither plaintiffs nor any other business can produce or sell Intoxicating Hemp Products in Illinois. This is because, as described above, under Illinois law psychoactive Cannabis Products may be made and sold in Illinois only if they are produced with cannabis plants that are illegal controlled substances under federal law (*not* hemp) and are processed under Illinois' regulatory scheme. But plaintiffs do not use such plants to make their products. Their entire claim is based on the federal hemp loophole that allows "hemp" — which is *not* a controlled substance — to be converted into Intoxicating Hemp Products. Dkt. 1 ¶¶ 47-48, 91-93. Indeed, plaintiffs concede that if the federal loophole expires, their businesses will shut down as a consequence of the change in federal law. *Id.* ¶¶ 32-38, 50, 84-88. That is not a consequence of Illinois law. And absent any discrimination against out-of-state interests on the face of Illinois' statutes, or by their effect, any claim that the Dormant Commerce Clause is violated has virtually no chance to succeed. *E.g.*, *Ross*, 598 U.S. at 369-71.

Instructive here are several cases addressing Dormant Commerce Clause claims in a similar context. In *Northern Virginia Hemp & Agriculture*, the Fourth Circuit affirmed the denial of a preliminary injunction against a state law prohibiting products that met the federal law definition of hemp but had a higher total THC concentration. 125 F.4th at 484. The court rejected the plaintiffs' Dormant Commerce Clause claim, holding: "Any limitation on buying hemp products that complies with federal law but not S.B. 903's total THC standard applies to in-state purchasers and out-of-state purchasers alike. Out-of-state processors and retailers are placed in the same position as their Virginia counterparts." *Id.* at 496.

In *Green Room*, the Tenth Circuit affirmed the dismissal of an action challenging a state law that made it unlawful to make or deliver hemp products with a THC content above a certain

threshold, "even though these products may be legal under federal law." 157 F.4th at 1204-05. The court similarly held that the plaintiffs' Dormant Commerce Clause claim was unsound because the challenged law "does not distinguish between hemp produced in-state and hemp produced out-of-state." *Id.* at 1210; *see also AK Indus. Hemp Ass'n, Inc. v. Alaska Dep't of Nat. Res.*, 803 F. Supp. 3d 862, 873-74 (D. Alaska 2025) (rejecting Dormant Commerce Clause challenge to State's restrictions on hemp products not prohibited by federal law because, contrary to plaintiffs' contention, the State's regulations did not "discriminate against out-of-state hemp retailers"). Plaintiffs' attempts to distinguish this precedent, Dkt. 4 at 20-22, are unconvincing.

Plaintiffs' reliance on *Titan Logistics Group LLC v. Tischler*, 838 F. Supp. 3d 724 (N.D. Ohio 2026), Dkt. 4 at 17, is misplaced because the Ohio law contested there allowed the sale of intoxicating products made with hemp, but only if they were made from hemp grown in Ohio and were produced in Ohio. *Id.* at 730-31; *see also Titan Logistics Grp. LLC v. Tischler*, No. 26-3648 (6th Cir. Sept. 25, 2026) (Dkt. 4 Ex. G at 3-4) (partially denying stay of preliminary injunction pending appeal). As explained above, that is not the case in Illinois. *E.g.*, 8 Ill. Admin. Code § 1300.40(c) (banning sale of intoxicating hemp in Illinois, irrespective of residency).

Plaintiffs nonetheless insist that the Illinois Hemp Amendments have "the direct effect of discriminating against out-of-state hemp companies" because they prohibit commerce in products that are not illegal under federal law, Dkt. 4 at 14, and because no licenses are currently available for plaintiffs under the CRTA, *id.* at 15. Neither contention is sound.

Although federal law does not presently ban Intoxicating Hemp Products, and some States currently allow their production or sale, those circumstances do not establish that Illinois law discriminates against out-of-state interests, either on its face or by its effects. *See N. Va. Hemp & Agric.*, 125 F.4th at 496; *see also Park Pet Shop*, 872 F.3d at 502 ("[B]reeders in Illinois enjoy no competitive advantage over their counterparts outside the state. All breeders are similarly

disadvantaged."). And a license under the CRTA would not allow any plaintiff to make or sell Intoxicating Hemp Products, which is the relief they seek, because those licenses are limited to cultivating, producing, and selling Cannabis Products, not Intoxicating Hemp Products.

### 3. The Hemp Act Does Not Excessively Burden Interstate Commerce.

Plaintiffs also cannot prevail on the Dormant Commerce Clause claim under the balancing test set forth in *Pike*, 397 U.S. 137. States have an indisputable power to regulate in "matters of health and safety." *De Buono v. NYSA-ILA Med. & Clinical Servs. Fund*, 520 U.S. 806, 814 (1997); *see N. Va. Hemp & Agric.*, 125 F.4th at 484. As common sense dictates, and the background to passage of the Illinois Hemp Amendments shows, those concerns are acute when it comes to the sale of intoxicating products. Here, those concerns far outweigh any incidental effect on interstate commerce created by these Amendments.

Under *Pike*, a facially neutral state law that serves a legitimate state interest "will be upheld unless the burden imposed on [interstate] commerce is *clearly excessive* in relation to the putative local benefits." 397 U.S. at 142 (emphasis added). The Seventh Circuit has repeatedly recognized the deferential nature of the *Pike* balancing inquiry. *See Owner-Operator Indep. Drivers Ass'n, Inc. v. Holcomb*, 990 F.3d 565, 568 (7th Cir. 2021) (noting that Supreme Court has rarely applied *Pike* to invalidate state laws). And *Pike* balancing, with its lower standard of scrutiny, applies "*only* when the challenged law *discriminates* against interstate commerce in practical application." *Park Pet Shop*, 872 F.3d at 502 (emphasis in original); *see also Nat'l Ass'n of Optometrists & Opticians v. Harris*, 682 F.3d 1144, 1157 (9th Cir. 2012). Plaintiffs bear the burden of demonstrating that Illinois law fails this lenient standard. *Baude v. Heath*, 538 F.3d 608, 613 (7th Cir. 2008). They have not met this burden.

As an initial matter, it is dispositive that the Illinois Hemp Amendments do not discriminate between in-state and out-of-state businesses in their practical application. *See Park Pet Shop*, 872

F.3d at 502. Nor can plaintiffs invoke *Pike* balancing based on the assertion that the Illinois Hemp Amendments had the "purpose" of discriminating against out-of-state interests. *See Ross*, 598 U.S. at 380-83. Their plain purpose is to protect Illinois consumers against all Intoxicating Hemp Products, including those made or sold by Illinois businesses.

In any event, Illinois law plainly advances an important state interest in protecting public health and safety that far exceeds any incidental effects on interstate commerce. Illinois adopted the Illinois Hemp Amendments to combat a serious public health risk, including harms to children. *See supra* at 7. Plaintiffs themselves concede that Illinois' interest in public health and safety are "important local benefits." Dkt. 4 at 20. And plaintiffs cannot establish that the speculative economic burdens on interstate commerce they invoke are clearly excessive in relation to Illinois' legitimate interests. *See N. Va. Hemp & Agric.*, 125 F.4th 472, 497 (4th Cir. 2025) (because "State regulation that applies equally to in-state and out-of-state interests does not offend the Dormant Commerce Clause," it "places no undue burden" on interstate commerce). Any "incidental" impacts on plaintiffs' businesses, *see* Dkt 4. at 20, do not excessively burden interstate commerce. *See Pike*, 397 U.S. at 142; *Green Room*, 157 F.4th at 1210; *Minerva Dairy, Inc. v. Harsdorf*, 905 F.3d 1047, 1059 (7th Cir. 2018) (disparate impact did not establish claim under Dormant Commerce Clause even though out-of-state individuals who applied to become Wisconsin-licensed butter graders were subject to greater burden).

Nor is Illinois required to demonstrate under *Pike* that it selected the least discriminatory means to protect the health and safety of Illinois residents. In *National Solid Wastes Management Ass'n v. Meyer*, 63 F.3d 652, 661 (7th Cir. 1995), the sole authority on which plaintiffs rely for their *Pike* argument (Dkt. 4 at 20), Wisconsin's law governing solid waste management had impermissible extraterritorial effects by regulating activities that occurred "wholly outside Wisconsin" and would "never cross [Wisconsin's] borders." *See Alliant Energy Corp. v. Bie*, 336

F.3d 545, 548 (7th Cir. 2003) (describing Wisconsin's law as "direct territorial interference"). To the extent that rationale survives *Ross* (*see* Ross, 598 U.S. at 370-73; *Novartis Pharma. Corp. v. Hanaway*, 180 F.4th 1097, 1110 (8th Cir. 2026); *Ass'n for Accessible Medicines v. Raoul*, 805 F. Supp. 3d 854, 858-62 (N.D. Ill. 2025)), *Meyer* is readily distinguishable because the law at issue there afoul of the Dormant Commerce Clause's extraterritoriality doctrine, and hence could not satisfy *Pike* balancing, because Wisconsin's stringent statutory scheme served "no legitimate interest" that could not be satisfied by a less burdensome regulation. *Id.* at 663. That is not the case here. Illinois' nondiscriminatory law does not take the extraordinary step of reaching outside the State to control the behavior of businesses that do not sell their products in Illinois. At the same time, all businesses, regardless of their residence, are subject to Illinois' restrictions if they do seek to sell Intoxicating Hemp in Illinois.

In any event, the alternatives plaintiffs offer, Dkt. 4 at 18-19, are not practical means to address Illinois' health and safety concerns. Arguments that second guess a State's method for addressing a legitimate concern based on alternatives with a supposedly lesser impact on interstate commerce seldom prevail. *See*, *e.g.*, *Minnesota v. Clover Leaf Creamery*, 449 U.S. 456, 473-74 (1981); *Tenn. Scrap Recyclers Ass'n v. Bredesen*, 556 F.3d 442, 452 (6th Cir. 2009); *Norwegian Cruise Line Holdings Ltd v. State Surgeon Gen., Fla. Dep't of Health*, 50 F.4th 1126, 1152 (11th Cir. 2022). Plaintiffs' arguments fare no better. Illinois already has a comprehensive regulatory structure for the production and sale of psychoactive products made from cannabis plaints, and it cannot reasonably be expected to disregard that structure and allow an unregulated industry to make and sell Intoxicating Hemp Products in Illinois. Nor should Illinois have to create an entirely new category of licenses, or change its existing licenses and regulatory structure, so industrial hemp can be processed and sold as Intoxicating Hemp Products in Illinois. The burdens of doing so, and of requiring the State to administer that structure for businesses located outside Illinois,

obviously far exceed any incidental benefit to interstate commerce. That is especially true when federal law is set to eliminate this industry nationwide in just a few weeks.

### 4. The Dormant Commerce Clause Does Not Apply to Illinois' Regulation of Hemp "Production," which Federal Law Specifically Authorizes.

At the very least, plaintiffs are not likely to succeed on the merits of their claims related to the production of Intoxicating Hemp Products because Congress specifically authorized States to regulate the "production" of "hemp." The Dormant Commerce Clause therefore cannot displace Illinois law that deals with hemp production by prohibiting it from being grown or made into Intoxicating Hemp Products. This provides an independent ground to reject that aspect of plaintiffs' action.

When Congress has "expressly contemplated, and indeed encouraged" state regulation in a particular area, courts lack the authority to strike down that regulation. *Fednav, Ltd. v. Chester*, 547 F.3d 607, 624 (6th Cir. 2008). That is because the Commerce Clause applies only "when Congress' power remains unexercised" and "Congress has not acted or purported to act." *Merrion D. Jicarilla Apache Tribe*, 455 U.S. 130, 154 (1982). When Congress does exercise those powers, "courts are not free to review state taxes or other regulation under the dormant Commerce Clause." *Id.*; *see Elec. Power Supply Ass'n v. Star*, 904 F.3d 518, 525 (7th Cir. 2018). That principle governs here. Congress specifically envisioned state regulation of hemp production in the 2018 Farm Bill, which expressly provides that it does not limit state laws that "regulate[] the production of hemp," including "more stringent" laws. 7 U.S.C. § 1639p(a)(3)(A); *see C.Y. Wholesale*, 965 F.3d at 544 ("the 2018 Law expressly provides that the states retain the authority to regulate the *production* of hemp") (emphasis in original).

In *Fednav*, the Sixth Circuit considered the claim by a coalition of businesses that a Michigan law regulating the discharge of ballast water in Michigan waters burdened interstate

commerce, and therefore ran afoul of the Dormant Commerce Clause. 547 F.3d at 610, 623. The court rejected that argument, noting that Congress had enacted a law that "expressly contemplated, and indeed encouraged, state participation in [anti-aquatic nuisance species] prevention measures." *Id*. at 624. Thus, it held, "there is no need to conduct the *Pike* balancing at all [because] the Commerce Clause has not been dormant here." *Id.*; *see also Elec. Power Supply Ass'n*, 904 F.3d at 525; *Keweenaw Bay Indian Cmty. v. Khouri*, 549 F. Supp. 3d 662, 709 (W.D. Mich. 2021). That same logic forecloses plaintiffs' Dormant Commerce Clause claim regarding the production of Intoxicating Hemp Products. Congress "acted" when it passed the 2018 Farm Bill. *Merrion*, 455 U.S. at 154. And it "struck a balance" of state and federal cooperation in hemp regulation, expressly contemplating state regulation of hemp production. *Id*.

Further, because the Farm Bill defines "hemp" to include both industrial hemp and its "derivatives" and "extracts," 7 U.S.C. § 1639o(1), the term "production," in that law, cannot fairly be read to be limited to the "cultivation" of cannabis plants used to make hemp. It necessarily also includes the creation of products, including Intoxicating Hemp Products, derived from industrial hemp. *See C.Y. Wholesale*, 965 F.3d at 544. For all steps from cultivation to fabrication of Intoxicating Hemp Products, that is what Illinois law validly does.

#### 5. Illinois May Require that Retail Sales of Psychoactive Cannabis Products Be Made through In-Person Transactions by Licensed Dispensaries.

Plaintiffs also have no basis to contest Illinois' requirement that retail sales of psychoactive Cannabis Products to customers in Illinois be made through in-person transactions by licensed dispensaries. Illinois' police powers and ability to protect the health and welfare of its residents are at their peak for such retail sales to individuals in the State. And the Dormant Commerce Clause cannot dislodge those powers by forcing Illinois to accept mail-order or online sales. *See, e.g.*, *Brown & Williamson Tobacco Corp. v. Pataki*, 320 F.3d 200, 205, 212-14 (2d Cir. 2003)

(reversing judgment invalidating, under Dormant Commerce Clause, law that had effect of "eliminat[ing] out-of-state direct sales" of cigarettes to New York customers "by requiring face-to-face, in-state retail sales only"). Nor can it operate to require that such in-state retail sales of psychoactive cannabis products be made by unlicensed sellers. *See*, *e.g.*, *MacDonald v. President of N.J. State Bd. of Med. Examiners*, 189 F.4th 343, 361 (3d Cir. 2026) (Dormant Commerce Clause not violated by law requiring out-of-state doctors practicing telemedicine with New Jersey residents to have New Jersey medical license); *Quik Payday, Inc. v. Stork*, 549 F.3d 1302, 1309-10 (10th Cir. 2008) (Kansas did not violate Dormant Commerce Clause by requiring out-of-state lenders making loans to Kansas residents to obtain a state license and comply with Kansas consumer protection laws); *see also Goldfarb v. Va. State Bar*, 421 U.S. 773, 792 (1975) ("States have a compelling interest in the practice of professions within their boundaries, and . . . as part of their power to protect the public health, safety, and other valid interests they have broad power to establish standards for licensing practitioners and regulating the practice of professions"); *Dent v. State of W.Va.*, 129 U.S. 114, 124-28 (1889).

Here, the CRTA's comprehensive regulatory scheme, including its rigorous licensing standards and requirements, is designed to protect the health, safety, and well being of Illinois residents. Allowing plaintiffs and other manufacturers, distributors, and sellers of Intoxicating Hemp Products to bypass this system entirely would defeat that carefully constructed structure, to the clear detriment of Illinois' legitimate public policy interests.

**6. Current Limits on Available Licenses Do Not Save Plaintiffs' Claim.**

Finally, there is no merit to plaintiffs' contention that Illinois law violates the Dormant Commerce Clause because there are allegedly no currently available licenses for them to become licensed cultivators, infusers, or dispensaries of Cannabis Products that are legal under the CRTA. First, any current unavailability of licenses for plaintiffs under the CRTA applies equally to out-

of-state and in-state businesses, including the many plaintiffs who are located in Illinois and do business only in Illinois.[9] And plaintiffs, like any other interested parties, can seek to purchase a license from an existing licensee, subject to applicable agency review (e.g., to exclude applicants with tax filing delinquencies). 410 ILCS 705/15-60; 8 Ill. Admin Code §§ 1300.115, 1300.315, 1300.415; 68 Ill. Admin. Code 1291.210. Moreover, the remedy for an unconstitutional requirement that a license applicant be located in Illinois (which defendants disagree is the case) is to invalidate that discriminatory requirement, not to eliminate entirely the need to obtain a license, as plaintiffs seem to demand. Dkt. 4 at 25; *see id.* Ex. G at 8.

Second, the CRTA does provide for the issuance of 45 new infuser licenses to process cannabis plants (not industrial hemp) into derivatives that can be included in various consumables. 410 ILCS 705/1-10 (definition of infuser), 705/35-18. Plaintiffs, like any other eligible persons, are free to apply for those licenses. Again, however, that will not enable them to make or sell Intoxicating Hemp Products in Illinois, which is what they demand.

Third, plaintiffs do not dispute that for years it has been possible for licensed parties to make and sell Cannabis Products in Illinois in accordance with the CRTA. The Illinois Hemp Amendments' recent ban on the production and sale of Intoxicating Hemp Products in Illinois cannot retroactively invalidate Illinois' licensing structure for such activities under the CRTA.

Last, to the extent a Dormant Commerce Clause challenge to Illinois' licensing structure for Cannabis Products under the CRTA might have had any merit, despite conflicting federal court

---

[9] Plaintiffs complain that under Section 15-70(p)(3) of the CRTA, a licensed dispensary may not "[o]btain cannabis or cannabis-infused products from outside the State of Illinois." Dkt. 4 at 5. But this provision applies to "cannabis," not Intoxicating Hemp Products. Thus, it does not affect plaintiffs' interests at issue here, as they are strictly interested in making and selling Intoxicating Hemp Products. The Court therefore should not consider whether that provision — as part of the CRTA's top-to-bottom regulation of the cultivation, processing, and sale of Cannabis Products that are *not* made from industrial hemp — might violate some other parties' rights.

decisions on the issue,[10] the time to bring such a challenge has long passed. *See Finch*, 82 F.4th at 578-79. And the recent, unexpected one-month gap between the effective date of the federal hemp-loophole closure and the Hemp Act cannot possibly have required Illinois to rush to authorize, process, and issue new licenses for anyone, much less persons now producing and selling Intoxicating Hemp Products. The licensing process is detailed and requires careful administrative attention, not hasty or slap-dash changes to open the doors for selling potentially dangerous products in Illinois. *Cf. Titan Logistics*, Dkt. 4 Ex. G at 8-9 (rejecting plaintiffs' incumbency argument based on current non-issuance of new licenses).

## III. Plaintiffs Will Not Be Irreparably Injured by Enforcement of the Hemp Act.

Plaintiffs have also failed to make a sufficient showing of irreparable harm if the Court denies their motion. They allege that they will suffer significant damages, including lost revenues, if the Illinois Hemp Amendments are enforced. Dkt. 1 ¶¶ 81-89; Dkt. 4 at 9-11. But they concede that the same result will occur if the federal law closing the intoxicating-hemp loophole takes effect as scheduled in just a few weeks. Dkt. 1 ¶¶ 32-38, 50. Thus, plaintiffs cannot attribute all of these alleged damages, or any meaningful part of them, to Illinois' challenged laws.

Plaintiffs' delay in seeking relief, where they filed this action only a week before the Illinois Hemp Amendments were scheduled to take effect, also negates their claim of irreparable harm. *See Finch*, 82 F.4th at 578-79. "[C]ourts sitting in equity . . . will not reward plaintiffs who cause unreasonable and prejudicial delay in commencing suit." *Chi. Hous. Auth.*, 2025 WL 2972665, at *5 (cleaned up). In the context of a motion for emergency injunctive relief, as here, delay "undercuts the sense of urgency that ordinarily accompanies [such a motion] and suggests that there is, in fact, no irreparable injury." *Praefke Auto Elec. & Battery Co. v. Tecumseh Prods. Co.*,

---

[10] *Compare Peridot Tree WA, Inc. v. Wash. State Liquor & Cannabis Control Bd.*, 162 F.4th 1179, 1181 (9th Cir. 2026) (Dormant Commerce Clause inapplicable to state cannabis regulation), cert. pet'n pending; *Northeast Patients Group v. United Cannabis Patients & Caregivers of Maine*, 45 F.4th 542, 560 (1st Cir. 2022) (Gelpí, J., dissenting) (same); *with id.* at 544.

123 F. Supp. 2d 470, 478 (E.D. Wis. 2000) (cleaned up).

Here, plaintiffs knew when the Illinois Hemp Amendments were enacted, in June 2026, that they would ban all Intoxicating Hemp Products in Illinois. And plaintiffs were on notice since at least September 2, 2026, when Congress passed the federal law postponing closure of the federal intoxicating hemp loophole until December 11, 2026, that the Illinois Hemp Amendments would be a separate reason, apart from federal law, preventing them from continuing their production and sale of Intoxicating Hemp Products in Illinois during that one-month period. Yet they waited until the twelfth hour to bring this suit and seek relief, claiming an "emergency." That claim rings hollow and undercuts their motion for emergency relief. *See Jones v. Markiewicz-Qualkinbush*, 842 F.3d 1053, 1061 (7th Cir. 2016) ("Timeliness must be judged by the knowledge of the plaintiffs as well as the nature of the right involved.").

This unexplained delay also prejudices defendants. Emergency proceedings of a plaintiff's "own making" will prejudice a defendant if it is forced "to prepare for and contest litigation involving significant . . . constitutional issues in a short period of time." *Mintz v. Chiumento*, 724 F. Supp. 3d 40, 50 (N.D.N.Y. 2024); *see Kay v. Austin*, 621 F.2d 809, 813 (6th Cir. 1980); *Ariz. Pub. Integrity Alliance Inc. v. Bennett*, No. 14-cv-1044, 2014 WL 3715130, at *2 (D. Ariz. Jun. 23, 2014). Here, the Hemp Act and CRTA, along with related federal laws, create a complex tapestry of rules governing a complicated industry. Accordingly, while defendants are actively preparing to implement and enforce the Illinois Hemp Amendments, they should not also be forced to respond to last-minute claims to derail those efforts.

## IV. The Balance of the Equities and Public Interest Favor Denying Plaintiffs' Motion.

The court must also weigh each side's interests, as well as the public interest during the pendency of the suit. *Winter*, 555 U.S. at 20. In cases involving the government, these two considerations "merge." *Nken v. Holder*, 556 U.S. 418, 435 (2009); *Chamber of Com. of the U.S.*

*of Am. v. Bonta*, 62 F.4th 473, 481 (9th Cir. 2023). Illinois has a strong interest in enforcing its own democratically enacted laws, especially where they regulate intoxicating substances that affect public safety. "Any time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury." *Maryland v. King*, 567 U.S. 1301, 1303 (2012) (Roberts, C.J., in chambers) (cleaned up). Indeed, a federal court should issue injunctions against the State only "sparingly." *Rizzo v. Goode*, 423 U.S. 362, 378 (1976). This strong preference against such intrusive injunctive relief is primarily founded on "delicate issues of federal state relationships," premised on "the principles of equity, comity, and federalism." *Id.* at 379–80 (cleaned up).

Plaintiffs assert that the balance of harms tips in their favor because they have a likelihood of success on the merits, and they "face greater harm if an injunction is not issued compared to the harm facing Defendants." Dkt. 4 at 31. But plaintiffs are wrong on the merits, for the reasons set forth above. And they neglect to acknowledge the risks to public health and safety from granting a TRO, which they admit "are legitimate governmental interests." Dkt. 4 at 25.

**Conclusion**

For the foregoing reasons, plaintiffs' motion should be denied, and the Court should set the case for a status on further proceedings after December 11, 2026, when the federal intoxicating hemp loophole is set to expire.

Dated: November 13, 2026

KWAME RAOUL
Attorney General of Illinois

R. Doug Rees (IL 6201825)
Richard S. Huszagh (IL 6185379)
Aaron T. Dozeman (IL 6308909)
Lee B. Stark (IL 6336810)
Assistant Attorneys General

Respectfully submitted,

Kwame Raoul, Jerry F. Costello II, Mario Treto, Jr., Brendan Kelly, David Harris, Dr. Sameer Vohra, in their official capacities,

By: *s/ Richard S. Huszagh*
Senior Assistant Attorney General

Office of the Illinois Attorney General
115 S. LaSalle
Chicago, Illinois 60603
(312) 814-3000
*Richard.Rees@ilag.gov*
*Richard.Huszagh@ilag.gov*
*Aaron.Dozeman@ilag.gov*
*Lee.Stark@ilag.gov*